Funkhouser v. Lay.

FUNKHOUSER, *Appellant,* v. LAY.

1. **Fraud.** Fraud may be inferred; but this does not mean that it may be assumed. It can only be legitimately inferred from some tangible, responsible fact in proof. It is a deduction which an intelligent mind may honestly make from the incidents and circumstances surrounding the case, and which appear to be inconsistent with good faith and rectitude on the part of the actor. If, however, his conduct and the transaction under consideration reasonably con-

sist as well with integrity and fair dealing, the law rather refers the act to the better motive.

2. ——: INTERVENTION OF BONA FIDE PURCHASER. If a fraudulent grantee of the equity of redemption of land covered by a *bona fide* mortgage buy at the mortgage sale, he will acquire a title free of taint.

3. ——: ——: NOTICE. It is a general rule of equity that a purchaser with notice may protect himself by buying the title of a *bona fide* purchaser without notice.

4. Vendor and Vendee: PURCHASE OF ADVERSE TITLE. A vendee may buy up a title antagonistic to that of his vendor, and set it up to defeat that of his vendor or his vendor's representatives.

5. Case Adjudged. The principal purpose of this suit was to have one of the defendants declared a trustee for plaintiff of certain land lying beyond the limits of this State. The land was subject to a mortgage, the *bona fides* of which was not questioned. Before the trial, without any collusion on the part of this defendant and without any effort on the part of the plaintiff to prevent it, the mortgage was foreclosed, the mortgagee becoming the purchaser. This defendant then died and the suit was revived against her executor. *Held*, that plaintiff was not entitled to have him declared a trustee.

6. Practice: JUDGMENT. In an action by a judgment creditor against the debtor and a third party to enforce a trust against the latter as a means of obtaining payment of the judgment, it is no error to refuse the plaintiff a new money judgment against the debtor.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*E. McGinnis* for appellant.

*Cline, Jamison & Day* and *M. L. Gray* for respondents.

PHILIPS, C.—This is an appeal from the St. Louis court of appeals. The facts as disclosed by the pleadings and proofs are substantially these: On the 30th day of March, 1877, one Thomas J. Pickering obtained judgment in the circuit court of the United States for the eastern district of Missouri, against the defendant John F. Lay for $8,670.48, on which was collected, under execution, the sum of $69.33, and the execution returned not satisfied as to the balance.

John F. Lay then was and yet is a resident of the state of Illinois. In 1876 he owned certain real estate in said state. The said judgment was assigned by Pickering to plaintiff Funkhouser, who brought suit thereon against John F. Lay in Illinois on the 2nd day of October, 1877, which suit stood until the 14th day of February, 1879, when plaintiff voluntarily dismissed the same. On the 14th day of February, 1876, John F. Lay conveyed said land to one Drury in trust for one John E. Hayner to secure the payment of $4,000, money then borrowed of Hayner by John F. Lay; the note was payable three years after date, with interest payable semi-annually at ten per cent, with the provision in the deed of trust that if the interest was not paid when due the whole debt should become due and payment be enforced by sale by the trustee. In July, 1876, John Lay and wife conveyed said land to one Drummond, who shortly afterward conveyed the same to said John Lay's wife. In October, 1877, John Lay and wife conveyed the land to the defendant Charlotte Lay, who is the step-mother of John Lay. The consideration of this last deed is expressed to be $3,000 and subject to said deed of trust to Hayner. On March 28th, 1878, said Hayner, pursuant to the provisions of said trust deed, on default of payment of interest, had said land sold. The defendant Charlotte, through said Drummond, became the purchaser at the price of $4,600. She paid the costs and expenses of said sale, the accrued interest on the mortgage debt, and $100 of the principal, and received from the trustee a deed. On the same day she executed to said Hayner a deed of trust on said land to secure the payment of said $3,900, balance of purchase money. In August following, said Charlotte conveyed said land to Lizzie Lay, wife of said John Lay. This was a quit-claim deed, consideration $2,000, and the $3,900 debt to Hayner. On the 8th day of February, 1879, said Hayner caused said land to be again sold under his second deed of trust for non-payment of interest, and received a deed therefor.

The plaintiff brought this bill in equity setting up the foregoing facts, averring that all of said conveyances among the Lays and to Drummond and by Drummond to Mrs. Lay were fraudulent contrivances on the part of John Lay to defeat the collection of the Pickering debt, and that Drummond and Charlotte Lay were in all of said transactions actively aiding and abetting said John in said fraudulent attempts. No attack is made upon the integrity of Hayner's deeds of trust. The object of the petition is to charge Charlotte Lay as a trustee for plaintiff, and to have the value, rents and profits of said lands subjected to the payment of plaintiff's judgment, and to obtain judgment against John Lay for the said debt. The answer tendered the general issue. The multiform conveyances of the land in Illinois, to and fro among the family relatives of John Lay, with the attendant facts and circumstances in evidence, are such as to impress the mind very clearly with the belief that they were fraudulent as to the creditors of John Lay. And if the title acquired by Charlotte Lay had no other foundation than these family transfers, I should have no difficulty in deciding that she was a purchaser without consideration, and held the property in trust for the benefit of plaintiff as a creditor of John Lay.

But the circuit court and court of appeals evidently placed their ruling, in finding for defendants, on the ground that Charlotte Lay was an innocent purchaser, by reason of her purchase under the Hayner deed of trust. The learned judge, who wrote the opinion of the court of appeals, held that "the fact that Charlotte Lay paid no consideration for the equity of redemption, and that the conveyance by which she acquired it, was open to attack, did not deprive her of the right which she had, in common with the entire community, of purchasing at the trustee's sale." This position is assailed by plaintiff's counsel, with so much earnestness and plausibility, as to render it respectful, if not necessary, to re-examine more fully the correctness of that opinion, and the logic and authority of the appellant's opposition to

it. The argument against its validity may be summarized in the following propositions: 1st, That from all the facts and circumstances surrounding the purchase under the trustee deed and sale, Charlotte Lay did not design to acquire any adverse title to John Lay, but that her purchase was really made in his behalf; so that she continued to hold the title so acquired in secret trust for him; 2nd, That Charlotte Lay, by reason of her pretended ownership of the equity of redemption, was enabled to deter bidders at the sale, and thus to bid in the property for just the amount of the trust debt, as the presumption of outsiders would be that any surplus would go to the apparent owner of that equity; and that under the law the fraudulent holder of the right of redemption, cannot strengthen her title or throw off her character of trustee, by thus tacking on to her estate that of an innocent holder.

We will examine these propositions in their order.

The first involves mainly a question of fact. Does the evidence justify the conclusion that Charlotte Lay bought
1. FRAUD.          in under the trustee sale for the use of John Lay? Fraud, it is sometimes said, may be inferred. But this expression must not be construed to warrant the mere assumption of a fact. This inference can only be drawn legitimately from some tangible, responsible fact in proof. It is a deduction which an intelligent mind may honestly make from the incidents and circumstances surrounding the case, and which appear to be inconsistent with the good faith and rectitude of the actor. If, however, the conduct of the party, and the transaction under consideration, reasonably consist as well with integrity and fair dealing, the law rather refers the act to the better motive. The evidence fails to show with any degree of satisfaction, that Hayner, the owner of the deed of trust, acted in collusion with either John or Charlotte Lay. On the contrary, Hayner, who was examined as a witness on plaintiff's part, testified in effect, that he foreclosed his trust deed because of John Lay's failure to pay the accrued interest. This his

deed authorized him to do. It does not appear that he even communicated, directly or indirectly, with John or Charlotte Lay about the intended foreclosure. He was not required to consult them by the terms of his mortgage. He gave notice by advertisement as his contract stipulated. The first notice John and Charlotte had of the proceeding was observing in the newspaper the advertisement. Thereupon Charlotte wrote to Drummond to buy in the property for her. This he did announcing the fact at the time the property was stricken off. She seemed to anticipate, that as Hayner was selling to compel payment of the past due interest, he would probably be satisfied with that sum and the payment of costs, etc. To that end she sent Drummond her check for several hundred dollars. Hayner was content to take this past due interest and costs and $100 of the principal, all of which she then paid, and received a deed from the trustee, and at the same time executed back to Hayner her deed of trust to secure to him the $3,900, balance of purchase money. There is nothing unusual or unnatural in all this arrangement. There is no evidence that John Lay furnished one dollar of the money paid out about that sale. Without more the presumption would be that Charlotte Lay, who was the active participant in the transaction, furnished the money. The only evidence directly touching this point is that of Charlotte Lay, who testified: "I paid all the expenses in money, and gave my own notes secured on the property." By the execution of her individual note to Hayner she became bound for the payment of $3,900, which he might hold her other property for, if any she had.

In support of the second proposition, counsel is driven to assume the position that a grantee, who takes in collu-

2. ———: interven-  sion with a fraudulent grantor, where the
tion of bona fide
purchaser.        property thus taken is subject to an outstanding mortgage debt, cannot, by buying the property, under a foreclosure sale made pursuant to such mortgage, acquire the title freed from liability to the claim of a cred-

itor at large. I do not think the authorities cited and relied on sustain so broad an assertion. The rule is unquestionably, that a fraudulent grantee passes under the ban of the maxim: "He that hath committed iniquity shall not have equity." So, if A, in aid of a fraudulent scheme of B to cheat his creditors, takes a conveyance to B's property, though he subsequently does an act in amelioration of the condition of the property, such as repairing it and enhancing its value, or lifting from it an encumbrance, he will have no standing in a court of equity for re-imbursement for the outlay when called upon by the defrauded creditors of B. to answer as a trustee for their benefit. This is the doctrine of the text in Bump on Fraud. Con., 572.

The case of *Railroad Co. v. Soutter*, 13 Wall. 517, is consistent with this principle, and goes no further. The purchasers under the second mortgage there were held to have taken in fraud of the creditors of the company, who had brought a creditors' bill assailing the title of such purchasers. They bought subject to a prior mortgage. On the foreclosure of that precedent mortgage, and without sale thereunder, they saw fit to pay off the prior lien. They did not buy in under a foreclosure of the mortgage. When the creditors prevailed in their said bill, and obtained judgment, the fraudulent purchasers under the second mortgage, sought to be re-imbursed in the amount they had paid out in satisfaction of the prior lien. It was on this state of facts that Justice Bradley exclaimed: "Was it ever known that a fraudulent purchaser of property, when deprived of its possession, could recover for his repairs or improvements or for encumbrances lifted by him whilst in possession."

So in *Potter v. Stevens*, 40 Mo. 229, Stevens, though a purchaser for value, was not one in good faith. The notes executed by him for the purchase money, had been transferred to third parties by McDowell, the fraudulent grantor. When Potter, the defrauded creditor, sought to subject the property to its just liability for his debt, Stevens interposed

the defense, and sought relief on the ground that he had paid a part of the outstanding notes. The court held there was no equity in the claim; that he stood in no better situation than if he had paid the whole of the purchase money to McDowell at the completion of his purchase.

In all such cases it will be observed that the grantee in fact is holding under the fraudulent grantor, and not under another purchase from or through an innocent purchaser.

This brings us to the consideration of another rule in equity: that a purchaser with notice may protect himself by purchasing the title of a *bona fide* purchaser without notice. 1 Story Eq., par. 409; *Halsa v. Halsa*, 8 Mo. 308; *Lemay v. Poupenez*, 35 Mo. 71. The reason of this rule is aptly expressed by Chancellor Kent, in *Bumpus v. Platner*, 1 John. Ch. 220, to be " to prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell." Hayner, as mortgagee, was a *bona fide* purchaser for a valuable consideration. He took long anterior to the judgment obtained by Pickering. The purchaser under that mortgage took whatever title John Lay, the mortgageor, had at the time of the execution of the, mortgage, divested of all rights and interests derived from or through the mortgageor subsequent to the execution of the mortgage. *Mullanphy v. Simpson*, 4 Mo. 319; *Sims v. Field*, 66 Mo. 111.

Likewise may a vendee buy up a title antagonistic to that of his vendor, and set up this title to defeat that of his vendor, or his vendor's representatives. *Huth v. Carondelet M. R. & D. Co.*, 56 Mo. 206. If the purchaser under the mortgage acquires the right and character of the mortgagee, I am unable to comprehend how Charlotte Lay is to be affected with a trust to which the mortgagee was not subject. Had Hayner bought at the trustee's sale it would not be denied that he acquired the title freed from liability to plaintiff's debt. Had he thereafter sold to Charlotte Lay could it be said

3. ——; ——: notice.

4. VENDOR and VENDEE: purchase of adverse title.

30—78

that because she had fraudulently acquired the equity of redemption from the mortgageor, she could not buy under Hayner as an innocent purchaser? If so, what becomes of the doctrine that an innocent purchaser, as Hayner is admitted to be, "being entitled to hold and enjoy, must be equally entitled to sell" to whomsoever will buy?

But says counsel, Charlotte Lay, by appearing as the ostensible owner of the equity of redemption, was enabled to deter others from bidding at the sale, as the presumption would be that any surplus over the amount of the mortgage debt would go to her. This is more specious than real. Suppose she had not bid at all at the foreclosure sale, would not the presumption have been equally as strong that any surplus would go to her? In either case plaintiff had his remedy to reach such surplus. He could have sued by attachment and garnished the surplus fund, or followed it in equity with as much right as he pursues the remedy herein invoked. Plaintiff urges in answer to this that he did not then know the deed or claim of Charlotte was tainted with fraud. But as a matter of law he did have constructive notice. The alleged fraudulent deeds had been put to record, long prior to the trustee's sale. That imparted to the creditors of John Lay notice of the contents of those deeds. A cause of action then accrued to plaintiff, by attachment, or on his judgment in equity. And it was such notice, as from the date of recording the fraudulent deeds, put into motion the statute of limitation. *Rogers v. Brown*, 61 Mo. 195, 196.

There is too, another view of this matter which presents an insuperable objection to granting the relief sought. 5. CASE ADJUDGED. The land, alleged to be affected with the trust, is situated in the state of Illinois, a foreign jurisdiction. The courts of this State clearly have no jurisdiction to render any judgment *in rem* that will bind or affect this land. The judgments and decrees of local courts have no extra-territorial force. Story Conf. Laws, §§ 539, 543; *Smith v. McCutchen*, 38 Mo. 417. It may be conceded for

the purposes of this case, that a court of equity, having acquired jurisdiction over the person of defendant, might proceed to fix upon her the character of a trustee of this land for the benefit of the creditor plaintiff, and might make a decree *in personam* that would operate upon the conscience of defendant, and compel her thus to do justice and equity, under penalty of being dealt with as for a contempt. Perry on Trusts, 71, 72; *Burnley v. Stevenson*, 24 Ohio St. 478; s. c., 15 Am. Rep. 621. When the amended petition was filed herein, on which the cause was tried, Hayner had foreclosed the deed of trust executed to him by Charlotte Lay, and had bought in the land and obtained a deed therefor. By this the land is lost to defendants as well as the plaintiff. This fact is in proof. Plaintiff has stood by and suffered the fee title thus to pass away, rather than pay off or take an assignment of this outstanding mortgage. What equity has he to demand that Charlotte Lay shall be held bound to him for the excess of the supposed worth of this land over and above the mortgage debt? No fraud or actionable wrong of hers occasioned this last sale. It was made in spite of her co-operation or dissent, by a party who had a right to sell. Charlotte Lay is now dead, and this action stands revived against her executor. Any decree which could be rendered against the executor could only be operative on the assets of the estate in the executor's hands. Under the law and the facts of this case no such decree ought to be rendered.

Plaintiff insists that at all events the circuit court erred in not giving him judgment against John Lay for the 6. PRACTICE: judg- amount of his debt. The debt has already ment. been merged into a judgment in the federal court at St. Louis, a forum selected by Pickering. Why ask for another judgment for this same debt—in an action, too, by the assignee founded on the judgment of the federal court? What business has the plaintiff in a court of equity to demand a mere judgment which he could have, if at all, in an action at law, and for which he had suit

pending in Illinois, the place of John Lay's domicil, when this action was brought? The process of the federal court is ample to enforce the collection of that judgment in this jurisdiction. In this respect plaintiff complains without injury.

The judgment of the court of appeals affirming that of the circuit court, which dismissed the petition, is affirmed. All concur.