MILLER *et al. v.* MERINE.

*(Circuit Court, W. D. Missouri, W. D.* September 1, 1890.)

1. DEED—RECORDING—PRIORITIES.

In 1870 G. conveyed certain land to B., and before the deed was recorded conveyed the same land to H., who paid the price in reliance on B.'s representations that G. had attempted to make him a deed which had been destroyed because it did not convey the land in question. *Held,* that under Rev. St. Mo. 1889, § 2420, declaring that an unrecorded deed of realty shall not be valid, except as between the parties and such as have actual notice thereof, the conveyance to H. was entitled to priority over that to B., though not first recorded.

2. VENDOR AND VENDEE—BONA FIDE PURCHASER.

The premises in question having been purchased by one E. at a sale under a trust-deed executed by B., H. applied to G. to protect his title, and the latter thereupon procured E. to execute a quitclaim deed of the property to H. Subsequently H. mortgaged the property to his mother, who became the purchaser at a sale under the mortgage, and afterwards sold the premises to M. *Held* that, assuming that H. had notice that E. held the title for B., that fact afforded no proof that his mother had notice, and that, in the absence of proof that M. had such knowledge, it was immaterial whether H.'s mother had notice or not.

At Law.

This is an action of ejectment for the recovery of a valuable tract of land now situated within the limits of Kansas City, Jackson county, Mo. The cause having been submitted on stipulation to the court without the intervention of a jury, the court makes the following special finding of material facts:

*First.* George W. Bryant is as to these parties the common source of title. On the 21st day of April, 1870, Bryant was the owner in common with one H. F. Barr of the one undivided half of the land in controversy. H. F. Barr having since conveyed his interest to the wife of the defendant, that interest is not in dispute. On said 21st day of April, 1870, Bryant conveyed his said interest by deed of warranty to one W. H. Barr, which said deed was filed for record in the office of the recorder of said county on the 19th day of October, 1870.

*Second.* On the 23d day of July, 1870, and before the said deed from Bryant to William H. Barr was recorded, said Bryant conveyed said land by deed of warranty to John S. Homan. This deed was not acknowledged until the 8th day of October, 1870, and was delivered immediately following its acknowledgment. This deed was recorded December 13, 1870.

*Third.* The sale of this land to Homan was made by said William H. Barr after the deed of Barr from Bryant, Barr representing to Homan at the time that Bryant had attempted to make him a deed for this land, but that the deed delivered to him by Bryant did not contain a description of this land, and on that account he had destroyed the same, leaving the title in Bryant, and that he would have Bryant make the deed directly to him, (Homan.)

Thereupon Barr went with Homan to see Bryant, and, on Barr's representation and assurance to Bryant that the deed made to him by Bryant did not convey the land in question, and that he had destroyed the same, Bryant, in reliance thereon, Barr being nearly related by blood or marriage to him, made the deed mentioned in paragraph 2 to Homan. Homan, in reliance upon the truth of this representation and assurance of Barr, accepted the deed from Bryant, and paid the purchase price therefor. After the making and delivery of this last deed from Bryant to Homan, Barr filed the first deed from Bryant to himself for record. Homan, when he purchased, had no other notice than as above stated of the deed from Bryant to Barr.

*Fourth.* On the 7th day of October, 1873, William H. Barr conveyed the said land to F. M. Black, trustee, to secure the payment of an indebtedness of said Barr to M. D. Trefren and David Ramsay, which deed of trust was duly recorded on October 9, 1873. On breach of the conditions of said deed of trust the trustee duly foreclosed and sold said land under the deed of trust, at which sale John Enders became the purchaser, and received a deed therefor from the trustee, February 7, 1874, and duly recorded it on the same day. On the 8th day of May, 1874, said Enders conveyed said land by deed of quitclaim to said Homan, which deed was duly recorded May 9, 1874. On July 3, 1874, said Homan and wife conveyed said land by deed of trust to A. A. Tomlinson, trustee, to secure the payment of the sum of $1,600 to Mary E. Homan, which said deed of trust was duly recorded July 25, 1874. This deed of trust was foreclosed, and said Tomlinson, as trustee, by deed of December 8, 1877, recorded January 4, 1878, conveyed the land to said Mary E. Homan, and again, by quitclaim deed of date December 19, 1877, recorded January 4, 1878, said John S. Homan and wife conveyed to Mary E. Homan said land. And by deed of warranty of date October 27, 1885, recorded November 13, 1885, for the consideration of $7,500, said Mary E. Homan conveyed said land to Mary A. Merine, the wife of the defendant, John C. Merine.

*Fifth.* On January 14, 1876, this land was sold under sheriff's deed under judgment against said Barr to one Frederick Bruns, and by said Bruns conveyed April 23, 1884, to one Charles E. Kollman, who on November 11, 1885, conveyed by quitclaim to said Mary A. Merine. As the judgment on which the last-named execution sale was based was rendered in the court of a justice of the peace for a sum in excess of his jurisdiction, no further note is taken of this branch of the case.

*Sixth.* The plaintiffs claim title through said William H. Barr under the following state of facts found from the evidence: On January 5, 1874, one Shaeffer commenced suit by attachment against said William H. Barr in the circuit court of Jackson county, Mo., on certain indebtedness of said Barr to him then due, which suit passed to judgment April 20, 1874, under which judgment the interest of said William H. Barr in said land was sold under execution by the sheriff of said county on the 22d day of January, 1875, at which sale one George W. Miller became the purchaser of the same at the sum of $245. This deed was duly recorded March 10, 1875. Said Miller thereafter died, leaving the plaintiffs in this action as his testamentary heirs, who claim under the last will and testament of said George W. Miller.

*Seventh.* On February 19, 1875, said George W. Miller instituted suit in equity in the Jackson county circuit court against said Enders and others, to set aside and vacate the deed and title obtained by Enders under the sale by the trustee, F. M. Black, on the ground that he had bought the property with the means of and for the benefit of said W. H. Barr, and in fact held the title thereto in trust for said Barr. The said John S. Homan was made a party defendant to this action, who appeared and made answer thereto, setting up his title as heretofore stated, and claiming to be the *bona fide*

purchaser, and thereupon the action was dismissed as to said Homan, but was further prosecuted to final judgment against said Enders and others, in which the title of said Enders was found to be fraudulent, and the same was vested in the petitioner.

*Eighth.* The conveyance from Enders to Homan was brought about in this way: After Enders bought under the trustee's sale, Homan, becoming advised thereof, applied to Bryant to protect his deed of warranty against said asserted title of Enders, and thereupon Bryant paid to Enders the consideration for said quitclaim deed made by Enders to Homan, May 8, 1874. Barr was seen by Enders during the time of these negotiations, and assented to Enders' making the deed to Homan, and Enders seemed willing to do respecting the matter as Barr desired.

*Ninth.* The facts respecting the execution of the deed of trust by John S. Homan to Tomlinson, trustee, are as follows: Mary E. Homan, the beneficiary in said deed of trust, was the mother of John S. Homan. He got from her the sum of $1,600, for which he executed to her his note of date June 7, 1874, the same date as the execution of the deed, which note was due one year after date. Respecting the origin of this note the evidence is that John Homan got the money and used it in his mercantile business. He got the money prior to the execution of the deed. Whether on the same day or prior thereto is not stated, and whether or not it was understood and agreed when he did receive it that he was to give a mortgage on this land, or other security, is not stated. Under the foreclosure sale Mary E. Homan became the purchaser, and received the trustee's deed, and shortly thereafter John S. Homan and wife quitclaimed to said Mary E. Homan in satisfaction of said debt.

*Tenth.* Before Mrs. Merine took her deed from Mrs. Homan, Mrs. Homan undertook to quiet her title as to the claim of the Miller heirs, the plaintiffs. According to the best information then obtained by her, these heirs consisted of four children,—E. B. Miller, A. M. Miller, I. W. Miller, and Minerva, intermarried with one William F. Sonnenstein, residing in the state of Ohio, from whom was obtained a deed of quitclaim for the consideration of $125,— which was then supposed to embrace all the Miller heirs. There is no sufficient evidence to sustain the imputation of fraud on the part of those obtaining the deed.

*Eleventh.* The property in question at the time of the purchase by John S. Homan was inclosed with a fence. There were no other improvents upon it. Homan and those claiming under him have at times repaired the fence, and at one time a string of fence was built on one side of it. The only evidence of other overt acts of ownership by the Homans up to the time of the sale to Mrs. Merine is permission given to one John J. Mastin, an adjoining landowner, to use the same for pasturing stock, and who at times cut down the weeds thereon. He so continued to use the same up to the time of the purchase by Mrs. Merine. From the time of the purchase by Merine they have had open or visible possession thereof. No taxes were ever paid on this property by William H. Barr, the taxes having been paid by those claiming under Homan.

*Matthews & Meriwether*, for plaintiffs.

*Jefferson Brumback* and *Ashley & Gilbert*, for defendant.

PHILLIPS, J., (*after stating the facts as above.*)   The deed from Bryant to William H. Barr, as between them, vested Bryant's title in Barr.   At common law, Homan took nothing by the grant to him, as Bryant had nothing then to convey; and Barr, being prior in time, would be prior in right.   But the registry act of the state interposes and plays a very important part in this contest.   The statute in force at the time of

these transactions was the same as sections 2418–2420, Rev. St. Mo. 1889. Section 2418 requires that every instrument of writing conveying any real estate or affecting the same, etc., shall be recorded in the office of the recorder of the county in which such real estate is situated. Section 2419 declares that every such instrument so recorded "shall from the time of filing the same with the recorder for record impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed in law and equity to purchase with notice." Section 2420 declares that "no such instrument in writing shall be valid except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the recorder for record." These provisions have wrought radical changes in the relative rights of successive grantees under the same grantor.

The contention of plaintiffs' counsel is that the statute is to be subjected to that construction which brings it within the rule that the deed first made and first recorded must have priority. An examination of the many discussions and decisions bearing on this mooted question has satisfied my mind that it turns upon the phraseology of the statute of the particular jurisdiction. The corresponding section to that of 2420 of the Missouri statute in nearly one-third of the states provides that the unregistered conveyance shall be void against a subsequent *bona fide* purchaser "whose conveyance shall be first recorded." (California, Dakota, Idaho, Maryland, Michigan, Minnesota, Montana, Nebraska, Nevada, New York, Oregon, Pennsylvania, Tennessee, Utah, Wisconsin, and Wyoming.) Under such a statute the deed first put to record takes precedence. This was the turning point in the conclusion ultimately reached by the majority in the elaborately considered case of *Fallass* v. *Pierce*, 30 Wis. 443. Chief Justice DIXON, after noting this distinguishing provision of the Wisconsin statute, says:

"Without the deed to such a subsequent purchaser first upon record, the title under the prior unregistered deed must still be preferred. Under the statutes of the states to which reference has been made this is not so. It is enough there that the subsequent purchaser for a valuable consideration and without actual notice looks upon the record at the time of purchase and finds no conveyance from his grantor then recorded. He is not required to put his deed first upon record, in order to be protected as against prior conveyances from his grantor, but only to do so in order to protect himself against subsequent *bona fide* purchasers for value from the same grantor, or in the line of recorded conveyances from him. Accordingly, in those states, the courts hold that if A. conveys to B., a *bona fide* purchaser of real estate for value, who fails to put his deed upon record until after A. conveys the same land to C., a second *bona fide* purchaser for value, and B. then puts his deed on record before C. records his, the title of C. shall nevertheless prevail as between him and B., because it is the fault of the latter that he did not immediately record his deed, and so the equities are with C. But under our statute this cannot be so, because C. must not only be a subsequent *bona fide* purchaser for value, but must also have his deed first duly recorded. Both conditions of the statute must be complied with."

Webb on Record Title, § 13, after noting the language of statutes above cited, says:

"Where the statute does not by such express terms make the rights of the subsequent purchaser depend upon priority of record, such priority, or the want of it, is immaterial; and the courts have almost uniformly held that a subsequent conveyance for valuable consideration taken without notice of a prior unrecorded one prevails over such prior instrument, whether the latter one be first recorded or not. Where, through the neglect of the first grantee to record his deed, a subsequent party has been led to part with a valuable consideration, a race for registry between the two does not afford a proper criterion by which their rights should be determined." Citing in note a large number of authorities supporting the text.

Such is clearly the view expressed by the supreme court of the United States in *Steele* v. *Spencer*, 1 Pet. 552. The statute of Ohio allowed the grantee six months after execution of deed for recording the same, and, if not so recorded, it should be void as to subsequent *bona fide* purchasers. The court say, respecting the deed first made:

"The plaintiff's deed not being recorded, the statute avoids it in terms as against all subsequent purchasers for valuable consideration without notice, whether their titles be recorded or not. If the defendants had held under a conveyance executed by Jesse Spencer in obedience to the decree, their title deed, although not recorded, would by the terms of the statute prevail against the plaintiff's prior unrecorded deed. A deed not being recorded avoids it as against subsequent, but not as against prior, purchasers."

This is also the view taken of the effect of the Missouri registry act by the state supreme court. In *Aubuchon* v. *Bender*, 44 Mo. 564, the court say:

"At common law there was no obligation to put upon record a conveyance affecting the title of land. But the duty of registration is now imposed upon the grantee, or the person to whom or for whose use the conveyance or covenant is made; and, as in all other cases where a duty is imposed, he who neglects it should suffer the consequences. The object of the requirement is to compel an exhibit of titles to facilitate transfers, but principally to guard purchasers against imposition; and hence, if the prior deed is not recorded, a subsequent buyer for good consideration without notice will be protected. This protection, always thrown around an innocent purchaser, and to which our statute also expressly entitles him, is founded on the broadest equity. He receives it not because the prior deed is invalid in itself,—the duty of recording is not enforced by any such penalty,—but because justice will not suffer a person who omits a plain duty to set up a claim against one who has been led by that omission to invest his money in what he supposed his vendor had a right to sell."

In *Maupin* v. *Emmons*, 47 Mo. 306, the same learned judge says:

"The statute invalidating the original unrecorded deed is held to operate in favor of a *bona fide* purchaser on sheriffs' as well as private sales, provided the original deed be not recorded until after the sale."

And in *Munson* v. *Ensor*, 94 Mo. 509, 7 S. W. Rep. 108, the court, *inter alia*, say:

"Hence it was held in *Fox* v. *Hall*, 74 Mo. 315, that a purchaser by quitclaim deed for value acquired the title as against a prior unrecorded deed of which he did not have actual notice."

From which it is clear that the supreme court of the state treats the subsequent purchaser as the holder of the title against the prior unre-

corded deed; and this for the obvious reason that section 2420 of the statute declares in express terms that the unrecorded deed shall be invalid as against a subsequent purchaser from the same grantor who buys without actual notice.

The only remaining question, therefore, is, did Homan have actual notice of Barr's deed when he purchased? The only notice which Homan had from Barr was that Bryant had attempted to make him a deed for the land, but the deed executed did not contain the right land, and that the same was destroyed, and then going to Bryant, the grantor, the assurance of Barr was accepted, and Bryant thereupon made a second deed to Homan. On this state of facts Barr was a mere equitable owner under Bryant. He stood in the position of a purchaser under contract, who, having performed the contract on his part, was entitled to a specific performance by the vendor. By the course he took, however, he put himself precisely in the attitude quite common in real-estate transactions,—of a purchaser under a bargain contract, who, after he becomes entitled to a deed from his vendor, sells his right to a second purchaser, and, to avoid the trouble and expense of a multiplicity of deeds, causes his vendor to execute a deed directly to the last purchaser. By such mutual understanding and arrangement all the parties thereto are concluded; the legal title would vest in the last purchaser. The only difference in point of fact between that and the case under consideration is that a deed had been made to the first purchaser, which fact was concealed by the first purchaser, by reason of whose assurances that the legal title had not passed from his vendor the vendor was induced to make a deed to the last purchaser, and the latter was persuaded to accept it, and pay to the intermediate vendor the purchase money. The registry act here interposes to accomplish the ends of equity, and declares that, as the first deed was not filed for record when the last purchaser parted with his money, the first deed shall be invalid as to him. Barr himself would be clearly estopped from asserting title as against Homan and those holding under him. "He who by his language or conduct leads another to do that which he would not otherwise have done, shall not subject such person to loss or injury, disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. * * * There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely upon." *Dickerson* v. *Colgrove*, 100 U. S. 580, 581. This principle is aptly expressed by Judge WAGNER in *Chouteau* v. *Goddin*, 39 Mo. 250:

"Where a party by his acts or words causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous condition, he will be concluded from averring anything to the contrary against the party so altering his condition."

The defense of equitable estoppel is available in the action of ejectment. *Dickerson* v. *Colgrove, supra,* 582.

Is plaintiffs' ancestor, the purchaser at execution sale against Barr, in

any better situation than Barr himself? If so, what becomes of the construction given to the state recording act? That statute declares Barr's deed invalid as against Homan, under whom defendant claims. As to the subsequent *bona fide* purchaser, that deed was a dead letter. If so, how can a subsequent creditor by the mere touch of an execution revitalize it? The execution creditor comes afterwards to take only what his debtor has at the time of the seizure to satisfy his debt, and the purchaser takes only what the debtor had. Long prior to the judgment and execution sale the deed to Homan had been put on record, and the prior unrecorded deed to Barr, by operation of law, was invalid as to his subsequent deed. By the same statute the recorded deed of Homan, coming from the same common grantor, Bryant, was notice to such subsequent purchaser of its contents. *Digman* v. *McCollum*, 47 Mo. 374. The recorded deed, although recorded subsequent to Bryant's deed to Barr, showed that before Barr's deed was recorded Homan had become the purchaser of this land. And the logic of the statute would seem to be that such subsequent purchaser under Barr would have to show that Homan had notice of the existence of the deed, or that Barr had the superior equity. The state supreme court in *Davis* v. *Owenby*, 14 Mo. 176, observes of the statute:

"The obvious meaning of the whole section is that filing a deed for record imparts notice to all persons who should subsequently become interested in the title, whether as purchasers or mortgagees."

Independent of the statute, there is both reason and authority for holding that estoppels *in pais*, as much so as estoppels of record, bind privies. The general rule is that the title of the purchaser is only that of the defendant under execution. *Wood* v. *Seely*, 32 N. Y. 116. In *Parker* v. *Crittenden*, 37 Conn. 152, the court say:

"The defendants claim under and through Barrows by attachment of his interest in the property, made after the plaintiffs' purchase. The plaintiffs, therefore, as privies in estate with Barrows, are bound by the same estoppel, and the defendant, being a *bona fide* purchaser, may avail himself of the estoppel."

So in *Bank* v. *Bowen*, 80 Ill. 541, it was held that where the party purchased notes secured by deed of trust of a bank whose officers were estopped from issuing a release of a prior deed of trust and payment of the debt against another bank loaning money on the faith of the validity of the prior trust-deed, such purchaser in equity occupied no better position than the bank of whom he purchased. And the supreme court, in *Dickerson* v. *Colgrove*, *supra*, seem to recognize this proposition, as the plaintiffs in that case were grantees, by several mesne conveyances from the party whose letter disclaiming title created the estoppel *in pais*. In *McBane* v. *Wilson*, 8 Fed. Rep. 734, the court says:

"Is George Wilson, the sheriff's vendee, in any better position? What rights has he superior to those of the judgment creditor upon whose execution he bought, and the defendant in the writ whose title he acquired? The title which Metzger had when the lien of Baum's judgment attached was at the best a condition alone liable to be swept away unless the recording acts were complied with."

Be this as it may, in view of the state statute respecting the registry of deeds my conclusion is that plaintiffs' ancestor, who was a mere speculator at the execution sale against Barr, did not acquire a better title and right to this land than the defendant.

In respect to the title of defendant through the deed of trust from Barr to Black, trustee, it is to be observed, first, that beyond controversy the mortgagee took as an innocent purchaser for value as against Barr and his creditors. As the subsequent seizure under attachment was only of the equity of redemption of Barr it was subject to the right of foreclosure by the mortgagee. The sale by the trustee vested the title in the purchaser as against Barr and the attaching creditor. *Funkhouser* v. *Lay*, 78 Mo. 458. The contention of plaintiff is that Enders bought the property in for the use and benefit of Barr, to which equitable interest of Barr the judgment lien of Shaeffer, the attaching creditor, of date April 20, 1874, immediately attached. As Enders, however, conveyed to John S. Homan on May 8, 1874, for a valuable consideration, although by quitclaim deed, Homan, under the Missouri recording act, took as an innocent purchaser, unless it appears he had actual knowledge of the secret trust in favor of Barr. *Munson* v. *Ensor*, 94 Mo. 504, 7 S. W. Rep. 108. The only notice John S. Homan had is to be inferred from the fact that Barr was consenting to the making of the quitclaim deed, and that Enders seemed to be willing to assent to what Barr desired in the premises. If it is to be conceded that this is a circumstance from which a court or jury might properly infer that Barr was the real party in interest, the question still remains to be answered, how is Mrs. Merine affected thereby? Did she take with notice thereof? On July 3, 1874, after he received the deed from Enders, John S. Homan mortgaged this property to Mary E. Homan, the immediate vendor of Mrs. Merine. The contention at this point by plaintiffs is that this mortgage was given to secure an antecedent debt. The only evidence of this fact is the statement by John Homan, in his deposition on cross-examination, that he thought the money he got from his mother secured by the deed of trust was advanced him before the mortgage was executed. Whether he meant by this to say that when he borrowed the money this security was agreed upon, or merely that the money was borrowed before the deed in point of time was executed, is by no means clear. But suppose this point be conceded to plaintiffs, there was nothing on the face of the record to indicate that the Tomlinson deed of trust was given to secure an antecedent debt. On the contrary, the note expressed in the face of the trust instrument bore the same date as the deed. So, when Mrs. Merine bought from Mrs. Homan, the record showed a clean transmission of whatever title or interest William H. Barr had through the trust-deed of Black on to Mary E. Homan. There is no evidence that Mrs. Merine had any notice of the imputed infirmity in the antecedent transactions such as would affect her title. Even if John Homan had notice that Enders held for Barr, there is no proof that Mary Homan had this knowledge. I cannot accept as sound law or ethics the suggestion of the learned counsel that the court ought to assume that the knowledge which

the son had the mother also had, and conclude fraud from mere suspicion. We cannot better express our view of this matter than to quote from *Funkhouser* v. *Lay, supra,* 462:

"Fraud, it is sometimes said, may be inferred. But this expression must not be construed to warrant the mere assumption of a fact. This inference can only be drawn legitimately from some tangible, responsible fact in proof. It is a deduction which an intelligent mind may honestly make from the incidents and circumstances surrounding the case, and which appear to be inconsistent with the good faith and rectitude of the actor. If, however, the conduct of the party, and the transaction under consideration, reasonably consist as well with integrity and fair dealing, the law refers the act to the better motive."

Whether Mrs. Merine with notice bought under Mrs. Homan, who was without notice, or whether she bought without notice under Mrs. Homan who had notice, in either event she would be protected. *Funkhouser* v. *Lay, supra.*

The suit of *Miller* v. *Barr and Enders* was dismissed as to John Homan, and Mary E. Homan was never made a party thereto. They are therefore not bound by any decree rendered therein. It affected no interest or right acquired prior thereto and independent thereof. *Dunklin Co.* v. *Clark,* 51 Mo. 62; *Jackman* v. *Robinson,* 64 Mo. 293; Hawes, Parties, § 26; *Mallow* v. *Hinde,* 12 Wheat. 193–199; *Hook* v. *Payne,* 14 Wall. 252–257; *Noyes* v. *Hall,* 97 U. S. 34–39. In view of the conclusion already reached, it is not deemed essential to say more of the effect of the quitclaim deed made by part of the Miller heirs, co-plaintiffs, to Homan than that I find from the evidence against plaintiffs' contention that the deed was fraudulently obtained. The only semblance of fraud in this matter is the obtaining by these heirs the money of Homan, which he believed was to quiet his title as to all these heirs. My assent cannot be given to the proposition, asserted by counsel, that by setting up the acquisition of the title of plaintiffs through the quitclaim deed the defendant is estopped from denying title in plaintiffs, or from showing title from other source. He does not sustain the relation of a tenant to plaintiffs. He does not hold his possession under contract of purchase from or by contract with plaintiffs. He had the possession independent of plaintiffs, at least under color of title from others. Even as a vendee under plaintiffs he could deny his vendor's title, and set up as many titles as he pleases. *Cummings* v. *Powell,* 97 Mo. 536, 10 S. W. Rep. 819. His effort to buy his peace, and remove any conceivable cloud from his title, upon no recognizable rule of law or justice should preclude him from supplementing the effort by proof of a superior title. In defending his possession against the attack of plaintiffs there is no legal inconsistency in saying: "I have the paramount title, and, in addition thereto, whatever title or claim you have you have quitclaimed to me." It is not deemed important to discuss the issue of the statute of limitation. My conclusion from the whole case is that the merits and the law are with the defendant. Judgment accordingly.