SNYDER, *Appellant,* v. THE CHICAGO, SANTA FE & CALIFORNIA RAILWAY COMPANY.

Division Two, December 6, 1892.

1. **Waiver:** TAKING LAND FOR PUBLIC PURPOSES: LAND-OWNER. A land-owner may as a general rule by words or conduct waive the payment of compensation as a condition precedent to taking and using his land for public purposes.

2. ———: ———: LICENSE. Such waiver may be inferred from a license, express or implied, to go upon the land and make the contemplated improvement.

3. ———: ———: ———: RAILROAD. Such license will be implied when the owner, with full knowledge on his part, permits or acquiesces in a railway corporation taking possession of his land and expending large sums of money in constructing its road thereon.

4. ———: ———: ESTOPPEL. So the owner will be estopped, after such license has been given, from recovering possession of the land so appropriated.

5. ———: ———: ———: MORTGAGEE. Conduct which would estop the land-owner will not necessarily estop a mortgagee or beneficiary in a deed of trust.

6. ———: ———: ———: ———. A direction by a mortgagee to the owner of the equity of redemption to obtain all the damages possible

Snyder v. The Chicago, Santa Fe & California Ry. Co.

from the railroad company purposing to construct its road through the mortgaged premises does not amount to a waiver of payment of compensation as a condition precedent to entry by the company.

7. **Mortgagor and Mortgagee**: AGENCY. The relation between the mortgagor and mortgagee does not constitute one the agent of the other, and the former has no power by virtue of the relation to do any act impairing the security or altering the condition of the property.

8. ———: ———: RAILROAD RIGHT OF WAY. Where, however, the mortgagee authorizes the mortgagor to grant to a railroad the right of way over the land, and to settle the damages therefor with the company, the acts of the mortgagor are binding on the mortgagee's interest in the land.

9. ———: ———: ———. The acts of the mortgagor as such agent would not, however, bind the interest the mortgagee subsequently acquired in the land through a prior mortgage made by a former owner.

10. ———: ———: ———: SCHOOL MORTGAGE: WAIVER. *Semble*, that the county officials cannot waive rights of the county held by it by virtue of a mortgage for school moneys.

11. ———: ———: ———: ———: ———. Such waiver at most cannot be created except by some affirmative acts or declarations on the part of the county officials.

12. ———: ———: ———: ———: FRIENDLY POSSESSION. The acceptance by a railroad of a grant of a right of way from the owner, and its direction that the money paid therefor be applied to the reduction of the school mortgage existing on the land, constitutes it a grant subject to the mortgage, and the company's possession is presumably friendly until some act of hostility on its part is brought to the knowledge of the county.

13. **Evidence**: ADMISSIONS: PLEADINGS. Pleadings filed by a party in another cause are admissible in evidence as admissions where they are material.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

*Crawley & Son* for appellant.

(1) The holder of a prior recorded mortgage is not bound to speak, and silence in such cases works no estoppel. *Walker v. Railroad*, 57 Mo. 275; *Barrett v.*

*Johannes*, 70 Mo. 439.    (2)    Counties and beneficiaries in mortgages to secure school moneys are not estopped to foreclose such mortgages by reason of the neglect, acquiescence or misconduct of county officers.    *Marion Co. v. Moffet*, 15 Mo. 604;    *Ray Co. v. Bentley*, 49 Mo. 236;    *Cedar Co. v. Johnson*, 50 Mo. 225;    *Jones v. Mack*, 53 Mo. 147;    *Board of Ed. v. Boyd*, 58 Mo. 276;    *Sturgeon v. Hampton*, 88 Mo. 203;    *Heidelberg v. St. Francois Co.*, 100 Mo. 70;    *Knox Co. v. Goggin*, 105 Mo. 182.    (3)    Purchaser at sale under a prior recorded mortgage takes the title unaffected by previous conduct or acquiescence on his part, as holder of a junior mortgage, though such conduct or acquiescence be sufficient to estop him from asserting said junior mortgage.    *McShane v. Moberly*, 79 Mo. 41.    (4) Any pleading, motion, application or affidavit, filed in court by a party to a pending cause, or his attorney of record, may be used against him in any other cause, as an admission of the truth of the matters stated in such paper.    *Dowzelot v. Rawlings*, 58 Mo. 75;    *Turner v. Baker*, 64 Mo. 218;    *Utley v. Tolfree*, 77 Mo. 307;    *Pomeroy v. Benton*, 77 Mo. 64;    *Schad v. Sharp*, 95 Mo. 573;    *Bogie v. Noland*, 96 Mo. 85;    *Murphy v. Type Foundry*, 29 Mo. App. 541.    (5)    Defendant's first instruction should have been refused.    A mortgage to secure public school moneys, being a grant to a public use, is expressly excepted from the operation of the statute of limitation relating to lands.    As against the title acquired by plaintiff under the county mortgage, limitation could not commence to run until his purchase at foreclosure sale, July 12, 1889.    Revised Statutes, 1889, sec. 6772;    Revised Statutes, 1879, sec. 3227; General Statutes, 1865, p. 746, sec. 7.    (6)    Defendant's second instruction should have been refused.    As a definition of adverse possession, it is incorrect and

misleading. Sedgwick & Wait's Trial of Titles to Land [2 Ed.] sec. 730, p. 568, *et seq.;* 2 · Jones on Mortgages [4 Ed.] sec. 1211. Possession by the mortgagor and his grantees is presumed to be friendly and not adverse to the mortgagee. *Atchison v. Pease,* 96 Mo. 566. A mere license or conveyance from a mortgagor in possession gives his licensee or grantee, having notice of the mortgage, no greater right or better title than the mortgagor himself had, and if such licensee or grantee with notice enters upon the land, and makes valuable improvements thereon, he does so at his own peril. 1 Jones on Mortgages [4 Ed.] sec. 676; 1 Hilliard on Mortgages [4 Ed.] p. 167, sec. 17. 1 American & English Encyclopedia of Law, title, "Adverse Possession," p. 245, sec. 14, and cases cited. Defendant's third instruction should have been refused. There is nothing in the record upon which to base it. (7) It is not necessary that an estoppel *in pais* be specially pleaded in ejectment suits. *Tyler v. Hall,* 106 Mo. 113. But, if the pleader elect to plead it specially, the matters alleged must make a *prima facie* case. Bigelow on Estoppel [2 Ed.] ch. 23, p. 532; Bliss on Code Pleading [2 Ed.] sec. 364; *Bank v. Doran,* 18 S. W. Rep. 836. "To constitute an estoppel *in pais,* there must have been a false representation or conceal- ment of material facts made with knowledge of such facts to one who was ignorant of the truth of the matter, with intention that he should act upon it, and the other party must have been induced to act upon it." *Blodgett v. Perry,* 97 Mo. 263, and cases cited; Bigelow on Frauds [1 Ed.] p. 458; Bigelow on Estop- pel [2 Ed.] p. 437; Bispham's Principles of Equity [3 Ed.] ch. 4, p. 347 *et seq.;* 3 Washburn on Real Prop- erty [3 Ed.] p. 77. No estoppel where the means of knowledge are equally open to both parties, or where the muniments of title to which the supposed estoppel

relates are of record. Cooley on Torts, p. 310; *Bronson v. Wanzer*, 86 Mo. 408; *Mason v. Black*, 87 Mo. 329; *Hagerman v. Sutton*, 91 Mo. 519; *Wolfe v. Dyer*, 95 Mo. 545; *Blodgett v. Perry, supra,* 273; *Railroad v. Richards*, 19 Atl. Rep. (Pa.) 931. No estoppel where the person setting it up acted without reference to the conduct or acquiescence complained of. 7 American & English Encyclopedia of Law, title, "Estoppel," p. 17, sec. 5; Bigelow on Estoppel [2 Ed.] 492; 3 Washburn on Real Property [3 Ed.] p. 75. An estoppel can have no greater effect than would a release deed of the same date, executed by the party sought to be estopped. 3 Washburn on Real Property [3 Ed.] pp. 74, 75; *Mueller v. Kaessmann*, 84 Mo. *loc. cit.* 327; *Henry v. Sneed*, 99 Mo. *loc. cit.* 426. No estoppel as against a superior recorded title, subsequently acquired, over which the party sought to be estopped had no control at the date of the acts or acquiescence alleged. *Barrett v. Johannes*, 70 Mo. 439; *McShane v. Moberly*, 79 Mo. 41; *McCormick v. James*, 36 Fed. Rep. 14; *People v. Miller*, 44 N. W. Rep. (Mich.) 172.

*Gardiner Lathrop, Isaac H. Kinley* and *S. W. Moore* for respondent.

(1) Plaintiff is estopped to recover. Where the land-owner, by his deed or acquiescence or license, induces a railroad to build its road, make permanent and costly improvements upon the strength of such contract, he will not be permitted to maintain eject-ment. *McClellan v. Railroad*, 103 Mo. 313; *Baker v. Railroad*, 57 Mo. 265; *Bradley v. Railroad*, 91 Mo. 493; *Provolt v. Railroad*, 57 Mo. 256; *Hubbard v. Railroad*, 63 Mo. 68; *Masterson v. Railroad*, 72 Mo. 342; *Gray v. Railroad*, 81 Mo. 126; *Cory v. Railroad*, 100 Mo. 282. (2) "Where abutting lot-owners who own the fee of

a street stand [by during a period of three years after authority has been granted to a railroad to construct its track in the same, they will be deemed to have acquiesced in the use of the street for railroad purposes, and will be estopped thereby from maintaining an action of ejectment against the company." 2 Wood on Railroad Law, sec. 792; *Wood v. Railroad*, 33 Beav. 290; *Railroad v. Nye*, 113 Ind. 223; *Deere v. Guest*, 1 N. Y. L. & Craig, 515; *Railroad v. Saltweddle*, 116 Ind. 257; *Sherlock v. Railroad*, 115 Ind. 22; *Trenton v. Chamber*, 1 Stock. 475; *Carson v. Coleman*, 3 Stock. 106; *Pricket v. Ridgefield*, 10 C. E. Green, 316; *Railroad v. Boorm*, 1 Stew. 450. (3) The right derived by plaintiff, by the purchase of the property in controversy at the sale under the county mortgage, is not sufficient to maintain ejectment. The mortgagor for many years had been in default; the mortgagee had long been entitled to take possession of the premises. *Masterson v. Railroad*, 72 Mo. 347; *Chouteau v. Riddle*, 19 S. W. Rep. 814. (4) That a state or municipal corporation may estop itself by its acts seems to be well settled. *State v. Bailey*, 19 Ind. 452; Sedgwick & Wait on Trial of Titles to Land, sec. 854; *State v. Milk*, 11 Biss. 197; *Commonwealth v. Andre*, 3 Pick. (Mass.) 224; *Commonwealth v. Pegepsent*, 10 Mass. 155; *People v. Society*, 2 Paine, 545; *People v. Maynard*, 15 Mich. 463; *Cahn v. Barnes*, 7 Saw. 48; Bigelow on Estoppel, 278. (5) Under the evidence it is clear that plaintiff is barred of his action by reason of two years' adverse possession in the defendant. The defendant, since March 7, 1887, has been in the continuous, open, notorious and adverse possession of the property in controversy claiming under a warranty deed of O. H. Wood. *Bushey v. Glenn*, 107 Mo. 331; *Neelson v. Chariton Co.*, 60 Mo. 333.

MACFARLANE, J.—This suit is ejectment to recover a strip of land through the southwest quarter of section 11, township 56, range 19, in Chariton county, which is occupied by defendant and used for the track of the main line of its railway between Kansas City and Chicago. The suit was commenced September 25, 1889. The answer was a general denial and two pleas of estoppel.

It was admitted on the trial that the land in dispute is military bounty land. It was admitted also by the pleadings and on the trial, that John B. Holloway was the common source of title; that on the twenty-eighth day of May, 1867, the said Holloway made and delivered to the county of Chariton a mortgage on said southwest quarter to secure the payment of about $1,400, borrowed by him of the school fund of said county; that about January, 1882, said Holloway sold and conveyed said land to O. H. and E. J. Wood, subject to said county mortgage; that on the ninth day of February, 1882, the said O. H. Wood made and delivered to James Snyder a deed of trust on said land to secure to plaintiff, Benjamin F. Snyder, a note for $1,050, due one day after date, with power of sale. The interest on the county debt was paid annually by Holloway until he sold to Wood, and after that by Wood until 1889, when the interest for 1888 was not paid.

It appears from the evidence that preliminary surveys for the location of defendant's road were made through this land some two years before work was commenced. After such preliminary surveys had been made and stakes set indicating several lines through this land, plaintiff and O. H. Wood went upon the land and examined the different lines, and from some marks inferred that defendant contemplated putting a depot

on it.   The evidence tended to prove that plaintiff then gave Wood authority, if a depot was put upon the land, to give the right of way through the tract, and also ground for depot purposes.   But if the depot was not located on the land then he should get all out of defendant he could obtain for right of way.

The road was finally located through this land, but no depot was put upon it.   About the twelfth of February, 1887, contractors, under defendant, for grading the road, were permitted by O. H. Wood to commence work on the land under a promise that damages would be paid soon.   Afterwards said O. H. Wood and defendant's agent agreed upon $1,350 as the damages to be paid for the right of way, and on the seventh day of March thereafter the said O. H. and E. J. Wood made and delivered to defendant a deed of general warranty to the right of way, being the land in dispute, and the work of grading was continued by the contractors until October or November of that year, when the road was completed, and fenced by defendant, and has since been used in the operation of the road.   The evidence also tended to prove that the money was paid to O. H. Wood by defendant with the understanding and agreement on his part that it should be used and applied in the payment of the county school fund debt; that this was not done, but the money was kept and appropriated by him.   It was shown that the expense of building the road and preparing it for use was several thousand dollars.

Plaintiff lived in Howard county, and testified that he did not think he had given defendant or any of its officers or agents authority to enter upon the land, and did not remember when he first learned that defendant had taken possession and commenced work.

On the fifth of February, 1889, the land was sold under the deed of trust made for the benefit of plaintiff

and was purchased by plaintiff, and a deed was afterwards made and delivered to him by the trustee.

The land was also sold July 12, 1889, by the sheriff under an order foreclosing the county mortgage, and was bought by plaintiff for $1,615, to whom a deed of conveyance was made. These deeds were read in evidence.

Defendant set up the foregoing facts as an estoppel to the ejectment suit.

Plaintiff asked the court to instruct the jury, in effect, that the facts did not constitute an estoppel, and that plaintiff was entitled to possession under the deeds read in evidence, and should have a verdict in his favor. This the court refused and instructed the jury as follows:

"1. The jury is instructed by the court that the land in controversy is 'military bounty land,' granted to a soldier of the war of 1812 for services therein, and if the jury shall find from the evidence that the defendant, by its agents, servants or employes, had for a period of two years or more before the institution of this suit been in the open, notorious, continuous and adverse possession of the land in controversy, then your verdict must be for defendant.

"2. To constitute the possession above referred to it is only necessary that defendant by its agents, servants and employes should have entered on said land in the course of the construction of said road, and continued such possession adversely to all other claimants, claiming such possession for itself, against all other persons; and if you find that defendant by its agents, servants and employes entered into the actual, open, notorious and exclusive possession thereof in February, 1887, and continuously occupied the same by its said agents, servants and employes in the construction thereof, and thereafter continued to so occupy

said land by its tracks and inclosures for the period of two years or more next before the institution of this suit, then you must find your verdict for the defendant.

"3. If you find from the evidence in this case that the plaintiff authorized or directed one O. H. Wood, the occupant of said land, being the mortgagor, or holding under the mortgagor, to grant the defendant railway company the right of way across the southwest quarter of section 11, township 49, range 19, for as much as he could get from the defendant, and that said Wood did grant the defendant by deed or otherwise for as much as he could get right to enter upon said land and occupy the same for its right of way, and that such land so granted as such right of way is the land in controversy, and that in pursuance of such grant defendant entered thereon and built its road at great expense, and that during the construction of said road the plaintiff knew thereof and made no objection to the defendant or its officers during the construction of said road, then your verdict must be for defendant; though you may further find that thereafter the plaintiff bought said land at the sale by the sheriff in foreclosure of the mortgage to Chariton county by deed from the sheriff to J. C. Crawley as plaintiff's attorney, and by deed from Crawley to plaintiff; and although you may further find that plaintiff also purchased said land and got a deed therefor under and by virtue of a sale by the trustee under the deed of trust made by O. H. Wood to secure the note of date February 9, 1882."

The jury found for the defendant, and plaintiff appealed.

I. There is no question, we believe, of the correctness of the general propositions that a land-owner may, by words or conduct, waive the payment of compensa-

tion as a condition precedent to taking and using his land for public purposes; that such waiver may be inferred from a license, express or implied, to go upon the land and make the improvement; and that license will be implied when the owner, with full knowledge, permits or acquiesces in a railroad corporation taking possession of his land and expending large sums of money in constructing its road thereon. It is also well settled that, after such license has been given, the owner will be estopped from maintaining ejectment to recover possession of the land so appropriated. *Bradley v. Railroad*, 91 Mo. 493; *Cory v. Railroad*, 100 Mo. 282; *McClellan v. Railroad*, 103 Mo. 295; 2 Wood's Railway Law, 792; Mills on Eminent Domain, sec. 140. To these propositions there is no controversy between counsel as we understand them.

II. We are asked by defendant to apply these principles of estoppel to the mortgagees of land, and, through them, to purchasers at foreclosure sales. While a mortgagee or beneficiary in a deed of trust has no further beneficial interest in the land than of security for his debt, there is no doubt that he can, by words or active conduct, estop himself to claim even the security, but, as he has such limited interest and has no possession or control of the land, it is quite evident that conduct which would estop the owner might not estop the mortgagee. It was accordingly held in *McShane v. Moberly*, 79 Mo. 45, that mere silent acquiescence would not be sufficient. In that case the mortgagee of a tract of land stood by, and saw the mortgagor lay it out into lots, blocks and streets, and dedicate the streets to public uses, and saw the city accept the streets, and adopt them as public highways. It was held that a sale of land, under the mortgage, passed the title to the purchaser freed of the public easement. The court says: "The interest of the mortgagee in the premises

is the amount of his mortgage debt expressed upon the face of his deed. And as before foreclosure the right of redemption resides with the owner of the equity of the redemption, the mortgagee had a right to presume that the city, when it began to deal with the premises, would, and that it intended to, perform its obligation to redeem. It cannot be maintained, on such a state of facts as disclosed by this record, that the assignee of the mortgagor may not only neglect the performance of his duty to redeem, if he wants the land, but that having neglected it he can go onto the land, and because he changes its face with streets he will acquire the land free from the mortgage altogether. So long as the mortgagee is guilty of no laches, no neglect, no fraud, he may point to his deed of record as his *caveat*, warning all comers of his rights and their peril in dealing with the premises."

III. In this case we are unable to see that there is any question of waiver of prepayment by any word or act of plaintiff. The evidence shows that he advised or directed Wood, the mortgagor in possession, to get all the damages possible for the right of way. Wood did contract for the compensation, received the money, and granted to defendant the right of way. Plaintiff at most only authorized Wood to agree upon and collect the damages. He gave no authority to waive prepayment. The extent to which plaintiff was bound then depends upon the authority he gave Wood, and what was done under that authority.

The relation between mortgagor and mortgagee does not constitute one the agent of the other, and the former has no power, by virtue of the relation, to do any act which would impair the security, or alter the condition of the mortgaged property. *Funkhouser v. Lay*, 78 Mo. 465; *McShane v. Moberly, supra*.

No reason can be seen, and we think none exists,

which would prevent one from acting as agent for the other in dealing with the property in which they are jointly interested. If, then, plaintiff authorizes Wood to settle the amount of damage, and grant to defendant the right of way over the land, what Wood did in the premises was binding, in respect to his rights under the deed of trust held by him. To that extent the third instruction was correct. The instruction, however, goes further, and declares, in effect, that the circumstances which would bind his interest, under his own deed of trust, would likewise bind him as purchaser under the prior mortgage held by the county. In this the instruction was erroneous. Plaintiff could only have intended, in instructing his agent, to affect the interests and rights he then held, and not such as he might thereafter acquire, through a prior mortgage made by a former owner of the land. The purchaser under the county mortgage cut out the second mortgage and all rights and obligations thereunder. *Barrett v. Johannes*, 70 Mo. 439; *Funkhouser v. Lay, supra.*

IV. It is next earnestly contended that the county of Chariton, by its conduct, waived the prepayment of damages, and plaintiff purchasing with notice is estopped from maintaining ejectment under his title derived through the county mortgage. We have grave doubts whether any county official had authority to waive the rights the county held under the mortgage. It was held in *Knox Co. v. Goggin*, 105 Mo. 182, that payment of the school-fund debt to the deputy county clerk was no payment at all, and that before a school-fund mortgage could be satisfied the money should be received by the treasurer, and his duplicate receipt filed with the county clerk, as required by statute. If satisfaction of a mortgage could only be accomplished by payment of the debt strictly in the manner pointed out by the statute, it is difficult to see how the security can

be wholly destroyed by the mere silence of the county officials. Indeed, the proposition is asserted broadly in *Heidelberg v. St. Francois Co.*, 100 Mo. 75, that the "doctrine of estoppel does not apply to counties." The following cases in addition to those cited by the court will be found to bear out the same proposition: *Sturgeon v. Hampton*, 88 Mo. 204; *Board of Ed. v. Boyd*, 58 Mo. 276; *Jones v. Mack*, 53 Mo. 147.

V.. However that may be, we are satisfied that there was no such conduct on the part of the county as amounted to a waiver of any of its rights. No affirmative act or declaration was shown. The debt was a part of a permanent fund intrusted to the county for the use of the public schools. Security for the principal, and prompt payment of the interest only, were required. The money was borrowed in 1867, and the interest had been paid annually for twenty years. The security was ample. The principal was not needed. So long as the annual interest was paid, there was practically no default. The improvements placed upon the land rather enhanced than impaired the security. Default was not made in the payment of interest until 1889, when the county immediately proceeded to foreclose. There was no estoppel. The sale under the foreclosure of the county mortgage swept away the rights defendant had secured by its deed from Wood. Plaintiff, the purchaser, took the title as it came from the grantor of the county.

VI. We do not think the mere entry on the land by defendant under a deed from the owner of the equity of redemption and constructing its road thereon sufficient notice to the county of an adverse possession to start the running of the statute of limitation. It has been recently held, in a number of cases, that the mortgagor, or his grantee in possession of the mortgaged property, does not hold adversely to·

the mortgagee so long as the relation exists, and the mortgage is recognized. See authorities cited in *Chouteau v. Riddle*, 110 Mo. 366; 1 American & English Encyclopedia of Law, 246.

As has been stated the custom of permitting school-fund bonds to run, as long as the security remains good, and the interest is paid, makes them differ essentially from ordinary commercial paper secured by mortgage. Default in the former does not properly occur, so as to affect the relation of the parties to each other, until there is a failure to pay the annual interest; and, until that default takes place, the presumption will be that the possession is friendly and not adverse. Moreover the agent of defendant, who took the right of way, recognized the county mortgage by directing the money paid for right of way to be applied to its reduction. When defendant took its grant of the right of way, therefore, it did so subject to the mortgage, and its possession was presumably friendly until there was some act of hostility brought home to the notice of the county.

The third instruction, in our opinion, improperly defined what would constitute an adverse possession.

VII. On the trial plaintiff offered in evidence an application for a continuance made by defendant, in another suit, respecting the possession of the land in dispute, in which it was stated that the right of way was, during the summer of 1887, occupied by contractors, and that defendant had no occupancy, dominion or control of it during that time. The court refused to admit the evidence.

It is well settled that any pleading or other paper, filed by a party in a cause, which states facts relevant to the issues in another cause on trial, in which the one filing it is also a party may be read as evidence in such cause, against the party making it as an admis-

sion. *Bogie v. Nolan,* 96 Mo. 85; *Schad v. Sharp,* 95 Mo. 573; *Pomeroy v. Benton,* 77 Mo. 64; *Turner v. Baker,* 64 Mo. 218. While such writings are, as a rule, admissible as admissions, what was contained in this one was wholly immaterial, and the application was properly excluded. As affecting the question of the statutes of limitation, which was the question in issue, the possession, occupancy and control of the property by the contractors, under a contract from the defendant, was the possession of defendant itself, and the evidence which was excluded would not have changed the legal effect of that possession.

Judgment reversed and cause remanded. All concur.