WOOLARD    *v.*    NASHVILLE.

(*Nashville.*    March    8,    1902.)

1. EMINENT DOMAIN. *Statutory method of condemning property exclusive.*

The method prescribed by statute for condemnation of private property for public use is exclusive. And the owner of property taken for public use must pursue the remedy prescribed by the statute, and cannot abandon that remedy and maintain an action against the taker for damages. (*Post, p. 358.*)

Cases cited: Mitchell *v.* Franklin Turnpike Co., 3 Hum., 456; Colcough *v.* Nashville, etc., R. Co., 2 Head, 171.

2. SAME. *City's power to condemn for viaduct and its approaches sustained.*

A municipal corporation whose charter authorizes it "to take and appropriate ground for widening streets or parts thereof, or for laying out new streets, avenues, squares, parks, or promenades, when the public convenience requires it," under certain provisions of the Code regulating the exercise of the power of eminent domain, has power to condemn private property necessary to the construction of a viaduct and its approaches over and along an existing street. (*Post, pp. 359, 360.*)

Act construed: Acts 1883, Ch. —.

3. SAME. *Construction of statutes relating to is strict.*

Statutes relating to the taking of private property for public use are strictly construed, and the courts cannot dispense with forms and conditions therein prescribed for protection of the property owner upon any idea that they are nonessential. (*Post, p. 361.*)

Case cited: White *v.* Railroad, 7 Heis., 540.

4. SAME. *Prepayment of price required.*

Prepayment by a city of the price of private property taken for public use for the erection of a viaduct and its approaches is required by a statute providing that "on payment of said

24 P—23

damages into the office of the Recorder, for the benefit of the owner of the land, the Mayor and Aldermen, first allowing said owner a reasonable time therefor, may order the street, alley, or commons to be opened." (*Post, pp. 360-362.*)

Code construed: Code § 1982 (S.); § 1662 (M. & V.); § 1389 (T. & S.).

5. SAME. *Abandonment of condemnation proceeding by city does not exist, when.*

A city will not be held to have abandoned its claim to private property condemned for public use—*e. g.*, for a viaduct and its approaches, by the mere fact of its failure to pay the assessed value thereof into the office of the Recorder as required by the statute, where it is clear that abandonment was not intended or in fact made, but the city, on the contrary, has taken possession of the property, and in fact appropriated it to the use for which it was condemned. (*Post, pp. 362-366.*)

Case cited: Tuttle *v.* Knox County, 89 Tenn., 157.

6. SAME. *Prepayment of price of condemned property waived by owner, when.*

A party for whose benefit a constitutional or statutory provision is made may waive same expressly or by implication. And the owner of property condemned by a city for public use—*e. g.*, for erection of a viaduct and its approaches, waives his constitutional and statutory right to have the price thereof paid before it is actually taken, by appearing before the commissioners appointed to assess its value, and undertaking to control the award or the amount of it, and by failing to appeal therefrom, and by permitting the city, without insisting upon prepayment of the price fixed, to take possession of same and erect the proposed improvements. (*Post, pp. 366-368.*)

Case cited: Anderson *v.* Turbeville, 6 Cold., 150.

7. SAME. *Statute not void for failure to require notice of condemnation proceedings, when.*

A statute authorizing condemnation of private property for public use must, to be valid, require reasonable notice of the condemnation proceedings to be given the property owner, but such requirement need not be express, but may be implied. And the giving of the requisite notice is necessarily implied from a provision in the statute permitting the property owner to appeal from the award made by the commissioners appointed to assess damages. (*Post, pp. 368-370.*)

Code construed: § 1982 (S.); § 1662 (M. & V.); § 1389 (T. & S.).

Woolard *v.* Nashville.

8. MUNICIPAL CORPORATIONS. *Ordinance validly passed, when.*

   A city ordinance for the condemnation of private property for public use—*e. g.*, for a viaduct and its 'approaches, is not one "for public improvement and public expenditure," that must originate with the Board of Public Works, within the meaning of a provision in the city charter requiring that "all bills for public improvement and public expenditure shall be prepared and signed by the Board of Public Works and introduced in the City Council by the Board of Public Works," especially where other provisions of the charter require the Board of Public Works to make a "careful estimate" of the cost of work or material essential to any "work or purchase" they may deem advisable, and to transmit this estimate, with an ordinance authorizing the necessary expenditure therefor, to the City Council. (*Post, pp. 370-373.*)

   Act construed: Acts 1883, Ch. 114.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County. J. W. BONNER, J.

W. R. CHAMBERS, JAMES B. NEWMAN and THOS. E. MATTHEWS for Woolard.

McCONNICO & McALISTER for Nashville.

BEARD, J. The plaintiffs are the owners of a house and lot fronting on Church Street, in the city of Nashville, the south boundary line of the lot corresponding with the middle line of the street. They have instituted this suit to recover damages inflicted by the city, according to the

averments of the declaration, in the construction of a viaduct built along and over Church Street (and the approaches thereto), which runs in front of the "house of plaintiffs, seriously interfering with the right of ingress to and egress therefrom, and otherwise inflicting injury upon their property."

The defense of the city, as set forth in its pleas, is that, in pursuance of certain provisions of its charter, an ordinance was properly and legally passed, by which so much of the right, title, and interest of the plaintiffs in this property as was needed for the construction of the viaduct and approaches, was condemned; that by said ordinance, seven freeholders were named, who were directed to examine the property of and assess the damages that would be sustained by the plaintiffs from the work contemplated, and report the same to the Mayor and City Council of Nashville; that these freeholders, after being duly sworn, made examination of the premises; that plaintiffs, having notice of the pendency of the proceeding, appeared before the freeholders, introduced evidence, and filed a written statement of the damages which they claimed their property would sustain; that these freeholders thereupon awarded to plaintiff the sum of $5,400.00 as damages to their property, and made a formal report thereof to the proper authorities of the city, who caused it to be spread on the minutes

Woolard *v.* Nashville.

by the Recorder, and that it was only thereafter that the city erected the viaduct and approaches complained of.

It is further averred that plaintiff did not appeal from the condemnation proceedings, and the award made in pursuance thereof, and that, failing to do so, they were without remedy in this cause; and, still further, that by appearing and giving evidence in the progress of these proceedings, they had estopped themselves from denying the jurisdiction of these freeholders to make the award.

To these pleas a demurrer, containing several grounds, was interposed, only four of which need be noticed.

The first and second of these grounds in effect raise the same question, to wit: that the ordinance providing for the condemnation of the property of the plaintiff, and the condemnation proceedings, were without any warrant in law, and were, therefore, void; the third insists that the pleas are fatally defective in failing to allege that the $5,400.00 awarded as damages had been paid into the hands of the Recorder of the city before the erection of the viaduct and approaches, as required by the statute, as without such payment "the condemnation of the property of the plaintiffs and all proceedings based thereon are void"; and the last, that the statute failed to provide for notice to owners, whose property was

sought for condemnation, of the institution or pendency of the proceedings, and also for the payment of compensation.

This demurrer having been overruled, the plaintiff thereupon filed two replications, in the first of which they say no such ordinance was passed, as is alleged in the pleas of the defendant, and in the second, that no part of the $5,400.00 awarded plaintiff as damages has been paid into the office of defendant's Recorder for the benefit of plaintiffs, as required by § 1982 of the Code (Shannon's) of Tennessee.

Issue of fact was taken to the first of these replications, and a demurrer was interposed to the second. This demurrer was sustained, and the trial then proceeded upon the issue raised to the first replication, which resulted in a judgment in favor of the defendant. The case is before us on appeal in the nature of a writ of error prosecuted by the plaintiffs.

If not conceded, at least it may be assumed as true, that the remedy provided by statute for the owner whose land is taken under the doctrine of eminent domain, is ordinarily exclusive (*Mitchell* v. *Franklin, etc., Turnpike Co.,* 3 Hum., 456; *Colcough* v. *Nashville, etc., R. R. Co.,* 2 Head, 171), but it is urged that in the statute under which these proceedings were instituted by the city, as well as in the proceedings themselves, there are vital defects, which preclude the opera-

tion of the rule announced in these cases, and authorize the maintenance of the present action of trespass. These defects were pointed out in the demurrer to the pleas of the defendant, as has been seen in the statement of the pleadings in the case.

We will now consider the points raised by the demurrer, and chiefly relied upon, for the reversal of the judgment below.

In the first place, it is insisted that the city was without authority to carry on the improvement in question, and therefore lacked the power to condemn, or have condemned, the property of the plaintiff for such purpose.

The averment of the pleas which, not being denied, is admitted to be true, is, that the viaduct in question was erected along Church Street and over the same to enable passengers and traffic to pass safely and conveniently above and across the network of railroad tracks which lie immediately west of the property of the plaintiff, and that the eastern approach to this viaduct, and a necessary adjunct to it, begins at a point east of this property and runs along its entire front.

The authority to construct this overhead street and the approach in question is found in subsection 35 of Sec. 17 of the Acts of 1883, constituting, in part, the charter of the city of Nashville, and is as follows: "To take and appropriate ground for widening streets or parts

thereof, or for laying out *new* streets, avenues, squares, parks, or promenades, when the public convenience requires it, under the provisions of §§ 1338, 1388, 1389, 1390, and 1391 of the Code."

That a municipal corporation must look to its charter alone for its grant of powers, and can exercise none not conferred expressly or fairly to be implied, is axiomatic, but .we think that it would be altogether a too narrow construction of this provision to hold that it did not embrace the right upon the part of the city of Nashville to construct this viaduct, or overhead street. While it was built along and over an old street, it was, in fact, a new street or avenue, opened up for the convenience of its citizens and the facility of traffic. And the approaches to this viaduct are but links, or parts, of this new highway, and are as much within the provision as is the viaduct itself. Randolph on the Law of Eminent Domain, Sec. 113; Tiedeman on Munic. Corps., Sec. 313; Beach on Pub. Corps., Secs. 1080, 1470, 1479 *et seq.*

It is next contended by the plaintiff in error, that the Circuit Judge erred in overruling the ground of demurrer to defendant's plea for its failure to allege that the damages awarded by the jury of inquest had been paid into the office of the Recorder before the erection of the viaduct and approaches thereto, the contention being that

the failure to so repay the award avoided the condemnation and the proceedings based thereon.

Section 1981 of the (Shannon's) Code provides the mode for the ascertainment of damages to the owner through whose property the street, alley, or common is to be extended, while § 1982 is in these words: "On payment of said damages into the office of the Recorder, for the benefit of the owner of the land, the Mayor and Aldermen, first allowing said owner a reasonable time therefor, may order the street, alley, or common to be opened." It is upon this last section that the plaintiffs in error rest the contention we are now considering.

We agree to the proposition that the statutory authority to appropriate the property of the citizen to a public use must be strictly construed, and that courts cannot dispense with forms and conditions that are prescribed by the law-makers upon the idea that they are non-essential. Lewis on Em. Domain, Sec. 203; *White* v. *Railroad,* 7 Heis., 540.

In the case last cited, this Court referred with approval to *Stacy* v. *Railroad,* 27 Vt., 44, in these words: "In that case the statute provided that when land was taken by a corporation for the use of their (its?) road, and the parties could not agree upon the price, the same should be ascertained by commissioners, and upon the

payment, or a deposit, thereof, the corporation should be deemed seized and possessed of the land, and it was held that until the payment was made, the company had no right to enter upon the land, to construct the road, or to exercise any act of ownership over it, and that a court of equity would enjoin them from exercising any such right."

This is sound law. That prepayment was provided for in the section of the Code above set out, we think is beyond doubt, and that the city, until this award was paid into the office of the Recorder, had no right of entry upon plaintiff's property, we think, equally clear, unless it be that the plaintiffs have in some way waived their right to insist upon such prepayment.

The theory of the plaintiffs is, that the city, by a failure to prepay the award, as directed by the statute, must be held to have abandoned the condemnation proceedings, and by its entry into possession became a tort feaser from the beginning, liable as such in the present action. On the other hand, the insistence of the defendant in error is that upon the record as it stands the plaintiffs waived the necessity of prepayment, and cannot now insist upon it as one of the grounds of the present action.

The facts upon which these respective contentions rest are found in the express or implied

admissions of the pleadings, as there is no evidence on the point. We will look to them to see what admissions are made.

The declaration alleges that the plaintiffs were owners of this property prior to and during the year 1899, and that during that year the viaduct and its approaches were constructed, the whole of the work being completed "on or about November 1, 1899." The present suit was instituted on the 25th day of April, 1900.

In addition to the general plea of not guilty, the defendant filed special pleas, the purport of which is set forth in an earlier part of this opinion. In this plea, or rather these pleas, briefly to recapitulate, it is alleged, that during the progress of the condemnation proceedings the plaintiffs appeared before the jury of inquisition and submitted a written statement of the damages claimed by them to result from the work contemplated, and at the same time introduced evidence on that point, and it was only after this was done, and after the award was made, and a failure to complain of the same by an appeal on their part, as provided by the statute for the dissatisfied land owners in such cases, that the city took possession of the street, and made the improvements, the magnitude and importance of which are manifest from the recitals of the declaration.

The demurrer of the plaintiffs to their plea

admitted the facts alleged, and there was no later pleading to put them in issue.

The plaintiffs in error on the point of abandonment rest their contention largely on a clause found in Sec. 656 of Lewis on Em. Domain, which is as follows: "The failure to pay the damages within a reasonable time after final determination will itself constitute an abandonment of any right to take the property under the proceedings."

The author cites as authority to this proposition three cases, to wit: *Beasley* v. *Mountain Lake Water Co.,* 13 Cal., 306; *Chicago* v. *Barbain,* 80 Ill., 482; *State ex rel.* v. *Cin.,* etc., *R. R. Co.,* 17 Ohio, Sec. 103.

The facts in the first of these cases are, that the Mountain Lake Water Co., in 1853, filed its petition to have condemned the lands in question: that soon thereafter commissioners were appointed to appraise their value, who, within the same year, reported their appraisement to the Court. Over three years and a half after the filing of this report, the company, without notice to the owner, procured an order affirming the report of 1853, and in 1857, again without notice to the owner of the land, it procured a final order or judgment condemning the lands and directing that the company be let into possession on payment of the appraised value. Before the final order of condemnation, to wit: in December, 1853, an

order was entered on the minutes of the Court, reciting that the company did not intend further to proceed to obtain possession of the lands named in their petition, and dismissing the action, and at the same time, by permission of the Court, the company withdrew the deposits of money and collateral theretofor made to secure the damages. After all this, the company, proceeding under the authority of the unwarranted order of 1857, sought to take possession by virtue of it, and the owners of the property filed their bill of injunction, and rested their right to resist the writ of possession, among other grounds, upon that of clear abandonment, which was ultimately sustained by the Court.

The other two cases simply involved the question of the right of the condemnor to abandon its proceeding before taking possession of the condemned property without incurring liability for the award, and the question was answered in favor of that right. Any utterance in the opinion in either of these cases beyond the point in issue was therefore dictum.

These cases do not support the broad statement of the text of Mr. Lewis, or the contention of the counsel of plaintiffs. In each there was an abandonment in fact, which was properly held to be an abandonment in law, while in the present case there was neither the intention to abandon, nor, in fact, an abandonment. On the contrary,

as we have already seen, after the award, the city took possession, and proceeded to construct this extensive improvement, and was using it when the present suit was instituted.

The case of *Tuttle* v. *Knox Co.,* 89 Tenn., 157, is also relied upon in this connection, but as the question of abandonment does not arise in that case, and as it in no respect bears an analogy to the case at bar, it may be dismissed without further notice.

So we hold that the theory of plaintiffs cannot be maintained. Is that of the city, to wit: that the conduct of the plaintiffs, as indicated by the pleadings, amounted to a waiver, maintainable; and if so, has it the legal effect insisted on?

Why should it not be regarded as a waiver? They came into the proceedings and undertook, by evidence, to control the award, or the amount of it; they indicated their satisfaction by a failure to appeal, and, it must be inferred from this record, made no protest against the city's entry upon the property, or the making of the improvement upon it. At all events, so far as we can discern, no evidence of dissatisfaction with any step taken by the city was indicated, until the present suit was brought, several months after the completion of the work. Under such circumstances, would a court permit an ordinary vendor of property, who was to receive cash for it, to interfere with the vendee's possession, or, ignoring the

contract, to proceed against the vendee, in an action of trespass? When he stood by and permitted his vendee to enter quietly and make valuable improvements, without prepaying the purchase money, as he was obligated to do, would a Court permit the vendor to ignore the contract and convert the vendee into a wrongdoer from the beginning? We think not.

In this case the plaintiffs were statutory vendors, and the city, as the result of the condemnation proceedings, and its acceptance of the same, was a statutory vendee. Having gone into possession, under the conditions implied from this record, it must be held that the plaintiffs have waived the payment of the award as a condition precedent, and whatever relief they get must be with regard to and only to the extent of the award. That a waiver of a constitutional or statutory provision in one's favor may be made by him is settled on authority (*Anderson* v. *Turbeville,* 6 Cold., 150), and illustrations of a waiver by acquiescence or implication may be found in *Snyder* v. *Chicago, etc., R. R.,* 112 Mo., 527; *The N. O. & Selma R. R. Co.* v. *Jones,* 68 Ala., 48; *McAuley* v. *Western Vt. R. R. Co.,* 33 Vt., 311.

The necessary effect of such waiver, however made, whether expressly or by implication, is not only to preclude the party whose property has been taken, from interfering with its possession,

but also from maintaining any action, which pro-
ceeds on the theory that the possession is wrong-
ful.

Again, it is insisted that the property of the
plaintiffs has been taken "without due process of
law," the two grounds of this insistence being
that the statute under which the condemnation
proceedings were held (found in §§ 1981, 1982,
1983, and 1984 of the (Shannon's) Code), failed
to require notice to the property owner of such
proceedings, and also failed to provide for the
enforcement of a security for the payment of the
award.

All the authorities agree that the right of emi-
nent domain can only be constitutionally exercised
when the property owner is given notice of the
effort to condemn his property, and just compen-
sation is provided for the owner upon its con-
demnation. Due process of law requires that no-
tice be reasonable in time, so that the owner
may have a reasonable opportunity to appear be-
fore an impartial tribunal, before any binding
decree or judgment affecting his case be entered.
*Stuart v. Palmer,* 74 N. Y., 183; *Davidson* v.
*N. C.,* 96 U. S., 97; Lewis on Em. Dom., Sec.
365.

Some authorities hold that though a statute is
defective in failing to provide for notice, yet the
defect is remedied where the property owner, hav-
ing actual notice, appears before the jury of in-

quest in the course of its proceedings. *State* v. *Jersey City,* 24 N. J. L., 662; *White Township* v. *Probate Judge,* 53 Mich., 130; *Kramer* v. *Cleveland,* 5 Ohio St., 140. While others proceed upon the principle that "where a statute authorizes a legal proceeding against any one, and does not expressly provide for notice to be given, it is implied that an opportunity shall be afforded him to appear, in defense of his rights, unless the contrary clearly appears." *Baltimore, etc., R. R. Co.* v. *Pittsburg, etc., Ry. Co.,* 17 W. Va., 812. But, says Mr. Lewis, in Sec. 368 of his work, already referred to, "by far the greater proportion of the cases, however, proceed upon the principle of implying a requirement to give notice from the provisions of the statute itself. Thus the obligation to give notice has been held to be implied by a provision in the statute requiring a previous effort to agree, or giving the right of appeal, or authorizing the owner to strike off jurors, or show cause against the confirmation of the inquisition." In support of his text, the author cites *Tracey* v. *Elizabethton, etc., R. R. Co.,* 80 Ky., 259; *Williams et als.* v. *Petitioners,* 59 Me., 517; *Hinckley et als.* v. *Petitioners,* 15 Pickle (MSS.), 447; *Boonville* v. *Ormrods, Adm'r,* 26 Mo., 193; *Dickey* v. *Tennison,* 27 Mo., 373; *Swan* v. *Williams,* 2 Mich., 427.

While it is true Mr. Lewis is not satisfied with the authority of these cases, yet we can see

24 P—24

no reason why they do not announce a sound principle. In each one of the statutes construed in them, there was some right conferred upon the property owner by express provisions, which could only be exercised after or upon the receipt of notice in some form.

In Code, § 1984, the right of appeal is given to the party who regards himself as aggrieved by the jury of inquisition, and the use of this right necessarily implies notice of the pendency of the proceedings.

We, therefore, hold this insistence of plaintiffs in error to be unsound. The other contention under this head, to wit: that compensation is not properly provided for, is equally so. As has been seen already, § 1982 enacts that the amount of the award shall be paid "into the office of the Recorder," and in construing this provision, we have held that this means prepayment by the city.

But again, it is argued that the trial Judge was in error in holding upon the issue of fact submitted to him, that the ordinance condemning the property of plaintiffs was legally passed, as was averred in the plea of the defendant, and denied in the replication thereto.

This objection grows out of a provision in the charter of Nashville, found in Sec. 10, Ch. 204, of the Acts of 1899, which is as follows: "All bills for public improvement and public expendi-

ture shall be prepared and signed by the Board of Public Works, and introduced in the City Council by the Board of Public Works."

The ordinance in question was not prepared and signed by the Board of Public Works, nor was it introduced in the City Council by that Board, but it originated in and was presented to the Council by one of its own members. The insistence is that the ordinance was a bill for "public improvement and public expenditure," within the contemplation of the statute, and failing as it did to conform to its requirement, it was without force and effect.

We agree with the trial Judge, that this ordinance was not within the provision of the statute. Under the charter of the city public improvements are under the supervision of, and all expenditures, in carrying on these improvements, are made by the Board of Public Works. It is proper, therefore, that an ordinance providing therefor should be proposed by this Board to the Council. But the ordinance contemplated by the statute is one which provides for a public improvement of a definite kind, and for an expenditure of public funds in carrying on such improvement.

The measure in question was none such. It was not the result of any contract, nor did it pledge the city to the improvement itself, or to the expenditure of money in making it. It was

simply tentative in character. It might or it might not lead to a public improvement. Its only purpose was to condemn land and ascertain its value, with the view of future possible improvement. At any time after the condemnation proceedings contemplated by it, until possession was taken by the city, it could withdraw from or abandon the proceedings, without incurring liability to the owners. Tiedeman on Munic. Corps., Sec. 242; Lewis on Em. Domain, Sec. 656; Dillon on Munic. Corps., Vol. 2, Sec. 610.

This view is strengthened, on referring to Ch. 114 of the Acts of 1883, of which this provision above set out is amendatory. By Sec. 35 of that Act, it is provided "that where the Board shall deem it advisable to make a contract for the execution of any work or purchase, . . . a careful estimate shall be made of the cost of such work or material." By Sec. 36 it is provided "that in all cases where the estimated cost of any expenditure exceeds five hundred dollars, the Board shall transmit to the Mayor and City Council . . . an ordinance authorizing the said expenditures, with an estimate of the cost."

While the property of the plaintiffs was condemned by the ordinance with the view to a possible improvement, yet the cost of the property could not be ascertained or estimated upon at the time of the introduction of the ordinance. That

depended upon the award of seven freeholders, who were thereafter to act upon an examination of the premises, and such testimony as might be submitted. If this award should be satisfactory to the city, and final as to the owners, then for the first time could the statute in question be complied with.

Finally, it is insisted that the judgment of the lower court cannot be sustained because of a variance between the pleadings and evidence in this—that the declaration avers and the pleas admit that the lot in question was the property of the three plaintiffs, while the ordinance condemns it as the property of "James A. Woolard and brother."

If it were conceded that this objection would, under ordinary conditions, be good, yet in view of the agreement of parties on which the issue of fact was tried, it could be of no avail to plaintiffs in error, either in this Court or the Court below.

Plaintiffs' replication to defendant's special plea confines its denial to the passage of the ordinance set up by the plea, and by express stipulation, the finding of the court was limited to this single issue.

Judgment affirmed.