UNION RAILWAY COMPANY v. GILBERT D. RAINE.

*(Jackson.* April Term, 1905.)

1. **EMINENT DOMAIN.** Amounts for value of land taken and for incidental damages to the remainder should be reported separately.

In proceedings under eminent domain laws to condemn land, the amounts awarded for the value of the land taken and for the incidental damages to the remainder of the land should be reported separately by the jury, though a joint judgment for both may be rendered. (*Post, pp.* 571, 572.)

2. **SAME.** Incidental damages estimated as though the land taken was occupied by as many railroad tracks as is practicable.

In proceedings under eminent domain laws to condemn land for railroad purposes, the incidental damages to the land not taken should be assessed as if the land taken was occupied with as many railroad tracks as practicable; and the fact that the railroad company does not contemplate such immediate occupation and use thereof cannot alter the measure of damages. (*Post, pp.* 572, 573.)

(569)

Cases cited and approved:    Alloway v. Nashville, 88 Tenn., 510;
Railroad v. Telford, 89 Tenn., 293; Railroad v. French, 100
Tenn., 209.

3.  **SAME.**  Incidental damages lessened by incidental benefits
by access of existing railroads, by crossing tracks of proposed
railroad, to remaining land valuable for manufacturing sites.

Where, in proceedings under eminent domain laws to condemn
land for railroad purposes, it appeared that the land not taken
was valuable for manufacturing sites, and that the several ex-
isting railroads running in front of it had the right to build spur
tracks across each other and over the proposed road in order
to reach any manufacturing plant thereon, the jury should be
instructed that in estimating the incidental damages they must
consider that none of the existing roads were cut off from ac-
cess to the property by the construction of the proposed road,
and the failure to incorporate such instruction in the original
charge, or to give such instruction upon a special request there-
for, is reversible error.    (*Post, pp.* 573-577.)

Code cited and construed:   Secs. 1489, 1504, 1857 (S.) ; secs. 1249a,
1562 (M. & V.) ; secs. 1119, 1338 (T. & S. and 1858).

4.  **SAME.**  Quantity taken should be valued at its worth at that
place and in that form.

In proceedings under eminent domain laws to condemn land for
railroad purposes, an instruction to the jury that in assessing
damages for the land taken, it would not be reasonable to fix
the price of the quantity taken at the general rate of the whole
tract, as "this would be selling by retail, and ought to be at
a higher price for the quantity taken," is erroneous because it
does not follow that the sale of a small quantity would in all
cases be at a higher price than the average price of the land
as an entire tract, for when a small strip or portion of the land
is taken, it ought to be valued at such price, for the quantity
taken, as the jury deems it would be worth at that place and in

Railroad v. Raine.

that form, whether that be more or less than the value proved per acre for the whole tract. (*Post, pp.* 577, 578.)

Case cited and overruled: Woodfolk v. Railroad, 2 Swan, 438.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County. —J. P. YOUNG, Judge.

M'FARLAND & CANADA, for Railroad.

TURLEY & TURLEY and CARROLL, M'KELLAR, BULLINGTON & BIGGS, for Raine.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action for condemnation of land for railroad purposes in the exercise of eminent domain. The right to condemn the land is not controverted, and the only question before us is the compensation that should be allowed the land owners as damages. There was a trial in the court below before the judge and a jury, and a verdict and judgment for $5,000; and for this amount, and interest from the date of the occupation, judgment was rendered.

There is nothing to show definitely how much of this was given for the value of the land taken, nor how much

was for incidental damages to the remainder of the tract.

As a matter of correct practice, these amounts should be reported separately by the jury, although a joint judgment for both together may be rendered.

The first assignment made is that the jury were instructed that they might estimate the damages incidental to the taking, as if the entire strip was occupied by as many tracks as practicable.

We are of the opinion that there is no error in this.

When a railroad asks to have land condemned for its purposes, it is presumed to ask for only so much as it may need for its purposes; and the damages should be assessed upon the theory or basis that the entire right of way asked for is intended to be devoted to the purposes of the railroad, either at once or subsequently; and, inasmuch as the landowner can have only one assessment of damages, it is proper that the entire damages shall be given to him at the time the property is taken and the condemnation made. After taking the right of way, the railroad company has the right at any time to occupy every portion of the way taken that it may deem necessary for the purposes of the railroad. *R. Co.* v. *French,* 100 Tenn., 209, S. W., 771, 66 Am. St. Rep., 752.

The fact that the railroad company does not contemplate the immediate occupation and use cannot alter the measure of damages. See, also, *R. Co.* v. *Telford's Executors,* 89 Tenn., 293, 14 S. W., 776.

As was said in *Alloway* v. *Nashville*, 88 Tenn., 510, 13 S. W., 123, 8 L. R. A., 123: "The owner is entitled to all of his damages—those to the land taken and those to the residue— so soon as the condemnation is made. Neither he nor the condemning party can await future developments to enhance or diminish the amount of the damages. These must be estimated on the assumption that the land appropriated will be properly and in a reasonable time put to the use for which it is condemned."

It is said that the court erred in refusing to charge the following charge requested by the plaintiff:

"In considering the possibilities of the uses to which this ground is adapted, you are instructed that you should not assume, that when these Union Railway tracks are constructed, this will prevent other roads on Broadway having access to the manufactories or industries that may be constructed on this land. The law makes the provision for one road crossing another to reach industries, and the contract between the city and the Union Railway provides for such crossings."

In order to understand the materiality of this request, it is necessary to give a description of the property, and the location of the road over it. The entire tract belonging to defendant, Raine, consists of 10.61 acres, lying on the south side of Broadway, near McGhee's Station, and is bounded on the west by Elmwood Cemetery, from which it is separated by Elmwood avenue. The entire tract is substantially the same kind of land, and the

physical topography or contour of the strip taken is the same as the balance of the tract. The strip taken embraces about one-third of an acre, or, to be accurate, .36, and fronts 270 feet on Broadway, which is not a public street, but a general railroad right of way for various roads entering the city of Memphis, and is not used by vehicles at this place.

Before the plaintiff entered upon it, there were already five tracks located on Broadway, abutting the front of this property, to wit, two tracks belonging to the Frisco Road, two to the Southern, one to the Chattanooga Road, and now one to the plaintiff, Union Road.

The proof shows that the property is valuable for manufacturing sites, and it is conceded that the several railroads which run in front of it had a right to build switches and spurs across each other in order to reach any manufactories or industries that may be erected upon this land.

It is a question which is controverted whether these several roads, after the track of the Union Railway Company is laid between them and this property, will have the right to pass over the track of this Union Road in order to reach the property of such manufactories and industries as may be erected upon it.

There is proof tending to show that, if these roads have the right to cross the Union Railway with switches and spurs in order to reach this property, that fact will materially affect the question of damages to the remainder of the property caused by the building of the Union

Railway tracks; and there is a strong intimation from one or more of the witnesses that, if the Union Railway tracks can be thus crossed, the remainder of the property would not be damaged, and therefore the actual damage to the landowner would be only the value of the land taken.

It is shown by the proof, to wit, the contracts with the city and its ordinances, that the Union Railway Company is authorized to construct switches and spurs in order to reach any manufactories or industries that may be erected upon this land, or upon any other along its line.

The contracts and ordinances of the city of Memphis were put in proof, in effect providing that any other railroad company should have the right to cross the tracks of the Union Railway Company to reach other railroads, industries, or shippers located upon either side of it, and that the Union Railway Company should have a like right to cross any other railroad for a like purpose.

It was contended by the defendant that this contract and ordinance did not apply to the locality in question.

As to whether it did or not was a question for the court to decide, upon a proper construction of the terms of the contracts and ordinances.

It was a very vital and material question, affecting the amount of the incidental damages, and the request was designed to obtain the instruction of the court as to the right of these different roads to cross the Union Railway tracks in order to reach this property.

The instruction should have been given in the original charge, but, if omitted in that, it should have been given in response to the request.

The request embodies a true and proper construction of the contracts between the Union Railway Company and the city of Memphis, and of the ordinances before referred to; and the contracts and ordinances leave no doubt that the several railroads do have the right to cross the track of the Union Railway Company in order to reach this and other property.

In addition, our statute provides that all the railroads of the State have power to construct their roads so as to cross each other, if necessary, by main trunks or branches, or to unite with each other as with branches, Shannon's Code, section 1504.

Section 1489 also provides that any railroad may build lateral roads, not exceeding eight miles in length, extending from the main stem of said line of railroad to any mill, quarry, mine, manufacturing plant, etc.

This right to cross the track of the Union Railway Company in order to reach this and other property was an important one, to be considered in determining the question of incidental damages done to the remainder of the tract.

Our statute provides that incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating incidental damages.    Shannon's Code, section 1857.

Railroad v. Raine.

Now, if these several railroads, having tracks along Broadway, have the same right of access to this property that they had before the construction of the Union Railway Line, and the property gets also the benefit of the frontage upon the Union Railway Line, with the right to have tracks laid to it from that line, it may be a question whether the incidental benefits to this land do not equal the incidental damages, or to state the proposition differently, whether any incidental damages arise.

However this may be—and as to this we express no opinion—if there be such incidental damages, over and above the incidental benefits, they should be estimated upon the theory and basis that none of the roads are cut off from access to the property by the construction of the Union Line.

It is said that the court erred in instructing the jury as follows:

"You are likewise instructed that, in assessing the damages to the land actually taken by the Union Railway Company, it would not be reasonable or proper to fix the price of one acre or the fourth of an acre or tenth of an acre at the general rate of the whole tract or a larger quantity, or even to estimate so many square feet, taken at the general fair value of the whole tract. This would be selling by retail, and ought to be at a higher price for the quantity taken."

This is the exact language of this court in the leading case of *Woodfolk* v. *N. & C. R. Co.*, 2 Swan, 438.

114 Tenn—37

Railroad v. Raine.

Exception is taken to the latter sentence, the language of which is, "This would be selling by retail, and ought to be at a higher price for the quantity taken."

The argument is that this rule is an invasion of the province of the jury, since it does not follow that the sale of a small strip or parcel of the strip would in all cases be at a higher price than the average price of the land as an entire tract. And it is said that in the sale of a small part of the tract sometimes a higher price may be realized, and sometimes a lower price, and that it is a matter of common observation that a sale of an entire tract as a whole can usually be made at an advance over the price when the land is subdivided.

In other words, common experience is that the sale of land as an entire tract will generally bring more than if it is sold in small tracts or subdivisions.

We are of opinion that this criticism is well made, and a more accurate charge would be that, when a small strip or portion of the land is involved, it ought to be valued at such a price, for the quantity taken, as the jury deemed it would be worth at that place and in that form, whether that be more or less than the price proven per acre for the whole tract.

For the reasons indicated, we think there is error in the judgment of the court below, and the judgment is reversed.