JOSEPH VAULX *et al. v.* TENNESSEE CENTRAL RAILROAD
COMPANY.

*(Nashville.* December Term, 1907.)

1. **NEW TRIAL.** Where the verdict is against the weight of the
   evidence; duty of the judge to weigh the evidence, reversal for
   failure to do so.

   Where a motion for a new trial is made on the ground that the
   verdict is against the weight of the evidence, it is the duty of
   the trial judge to weigh the evidence, and to grant a new
   trial if the verdict is against the preponderance of the evidence.
   It is improper for the trial judge to sustain the verdict because
   there is some evidence to support it, and where his opinion
   shows that he acted upon his rule to sustain the verdict where
   there is, in controverted cases, evidence to support it, the su-
   preme court will reverse the case, and grant a new trial. (*Post,*
   *pp.* 318-322.)

   Cases cited and distinguished: Railroad v. Roddy, 85 Tenn., 410;
   Jenkins v. Hankins, 98 Tenn., 545; Telephone & Telegraph Co.
   v. Smithwick, 112 Tenn., 467; Noel v. Railroad, MS., Dec.
   term, 1905.

2. **EMINENT DOMAIN LAWS.** Just or constitutional compen-
   sation, and incidental damages less incidental benefits.

   When land is taken in condemnation proceedings under the emi-
   nent domain laws, the just compensation for the land taken
   guaranteed by the constitution is confined to the value of the
   land actually taken, in the form and at the place taken, to
   which may be added, under statute, the damages for the
   injury done to the residue of the tract, considered as inci-
   dental damages, lessened by the value of the benefits, if any,
   conferred thereon by the improvement. (*Post, pp.* 322-336.)

   Constitution construed, though not cited: Art. 1, sec. 21.

Vaulx v. Railroad.

Cases cited and approved: Woodfolk v. Railroad, 2 Swan, 422; Railroad v. Stovall, 12 Heisk., 1, 3, 4; Moses v. Sanford, 11 Lea, 731, 732, 734; Alloway v. Nashville, 88 Tenn., 510, 523, 524, 526; Wray v. Railroad, 113 Tenn., 544; and other cases cited in the opinion, on pages 335 and 336, as bearing upon the question in a general way only, and not directly upon the subject.

3. **SAME.** Evidence of what has been offered for the land is incompetent to show its value.

In condemnation proceedings under the eminent domain laws, it is incompetent for the owner to prove, upon an issue as to the value of the land taken, what has been offered for his property, though the offer was made in good faith. Such evidence is incompetent. (*Post, pp.* 336-338.)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals.—JOHN W. CHILDRESS, Judge.

JOHN J. VERTREES and W. O. VERTREES, for plaintiffs in error.

CHAMBERS & AUST, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is a condemnation proceeding. The railroad company appropriated, as its right of way, 9.12 acres

of land out of a tract of 205 acres owned by the plaintiffs in error. There were appropriate proceedings instituted in the court below for the ascertainment of the value of the land appropriated and incidental damages. The only question before us now arises out of certain language used by the circuit judge in disposing of the motion for new trial, and next as to whether the circuit judge acted correctly in giving certain instructions to the jury, and in declining other instructions which were requested to be given by the plaintiffs in error, and in ruling out certain testimony offered.

As to the first question: Among other grounds for new trial in the court below the plaintiffs in error averred that the verdict was against the weight of the evidence. The circuit judge, in disposing of the motion for new trial, said:

"A number of very intelligent witnesses were examined in this case, and they differ widely as to the damages. Had the jury returned a verdict for $18,000 or $20,000 damages, I would have sustained it under my rule, because there was evidence to support it. Upon the other hand, the jury having returned the verdict that it did, I will sustain it because there is evidence to support it. Under my rule, when in cases of controversy there is evidence to support the verdict, I will sustain it.

The bill of exceptions adds the following:

"The court, in the opinion delivered in overruling the motion, did not weigh or compare, or attempt in any

way to reconcile, the evidence, but stated substantially that which has been stated hereinbefore. The court expressed no opinion as to the amount of the verdict; that is, whether in the court's opinion the verdict was proper, or for too small an amount."

The case was first appealed to the court of civil appeals, and from that court was brought here by the writ of *certiorari*. In the court of civil appeals, the action of the judge evinced by the excerpts above set forth was held to be error on the ground that it was the duty of the circuit judge to weigh the evidence on a motion for new trial, when the objection to the verdict is that it is not sustained by the evidence. We think this view is correct. The parties are entitled, on such a motion, to have the circuit judge weigh the evidence for the purpose of ascertaining whether it preponderates against the verdict. If, in his fair judgment, it is found the evidence preponderates against the verdict, it is his duty to set it aside and grant a new trial.

There is no difficulty in administering this rule where the question is simply whether the plaintiff or the defendant was entitled to a verdict on the issues made. There is more difficulty in a case like the present, where the only matter in issue is the value of certain property taken, and the incidental damages inflicted upon the residue of the tract not taken. However, the difficulty of determining the matter is no argument against the duty to make such determination. The parties are entitled to the judgment of the circuit judge as to whether

the amounts found by the jury upon each of the above-mentioned phases of the question represent a fair average of all of the evidence, after duly weighing and considering the evidence from every standpoint from which it should be examined, taking into consideration the appearance and manner of the witnesses, their means of knowledge, their intelligence, etc.

The rule is different in cases of purely personal injuries. In cases of that latter kind there is always the preliminary question as to whether the plaintiff is entitled to a verdict at all. When that stage of the litigation has been passed, and the jury have reported a certain amount of damages, then the question to be determined in respect of damages frequently arises in the court below upon a motion for new trial on the ground that the verdict is excessive, as evincing passion, prejudice, or caprice on the part of the jury. In determining this question, also, it is the duty of the circuit judge to weigh the evidence. Indeed, we know of no case where the circuit judge can lawfully pass over the duty to weigh the evidence, where an objection in due form is made in the court below to the verdict on the facts.

For the failure of the circuit judge in respect of the matter above mentioned, the judgment must be reversed.

We have been referred to the case of *O. F. Noel* v. *T. C. R. R. Co.* (MS. opinion, not for publication, filed by this court at the December term, 1905) as an authority in opposition to the conclusion just reached.

We do not think the opinion referred to is open to the construction claimed for it. There the question was whether the judgment should be set aside and a new trial granted simply because the circuit judge had said in substance that he was not satisfied with the verdict, but would let it stand. We said in that case, referring to *Telephone & Telegraph Co.* v. *Smithwick,* 112 Tenn., 467, 79 S. W., 803, that the court would reverse where the circuit judge expressed dissatisfaction with the verdict; that is, that this was the general rule, but that it did not apply where the dissatisfaction referred merely to the amount of damages, for which we cited *Jenkins* v. *Hankins,* 98 Tenn., 545, 41 S. W., 1028, and *Railroad* v. *Roddy,* 85 Tenn., 410, 5 S. W., 286.

It is true the cases referred to were cases involving unliquidated damages in actions of tort, and were applied to a case involving an estimate of value of property taken in condemnation proceedings and incidental damages to the residue of the land: We are of opinion that the particular rule referred to was properly applied in that case; that is to say, the mere fact that the circuit judge expressed dissatisfaction with the verdict is not enough to justify this court in granting a new trial, although the damages arise in condemnation proceedings. Such a statement shows that he has weighed and considered the evidence on which the verdict is based. Now the fact that after such consideration he is not satisfied with the amount in such a case we do not think ought to justify a new trial. The fact that he has

120 Tenn.—21

weighed the evidence, and as a result thereof is not sat-
isfied with the amount, but does not state an amount
as the one with which he would be satisfied, or one which
he thinks the evidence justifies, indicates that his re-
flections have not reached that degree of maturity which
would enable him to firmly differ with the conclusion
reached by the jury. In this view of the case, of course,
it would be highly improper to set aside the verdict for
mere dissatisfaction on the part of the circuit judge.
However, where the bill of exceptions shows that the
circuit judge has not given the parties the benefit of
his reflections at all; that is, has not weighed and con-
sidered the evidence—here is presented a case of breach
of duty on the part of that officer for which there must
always be granted a new trial.

Inasmuch as the case must go back for a new trial, it
is necessary that we consider some other assignments.
These are based upon certain objections to the charge of
the court, and his refusal to grant certain requests, and
his action on certain testimony offered.

In order that the objections to the charge may be
fully understood, it is necessary that we should set out
the substance of the charge on the points referred to.
The portions of the charge necessary to be set out read
as follows:

"(2) In estimating its value, all the capabilities of
the property and all uses to which it may be applied
are to be considered, and not merely the condition it is
in at the time and the use to which it is then applied

by the owner. It is not a question of the value of the property to the owner, nor can the value be enhanced by his unwillingness to sell. On the other hand, the damages cannot be measured by the value of the property to the party condemning it, nor by its need of the particular property. You cannot single out from the elements of general value the value for a special purpose, but you are to consider all the constituent elements that make up the market value. Its availability, adaptability, and capability for different uses and purposes, and everything which enhances or depreciates its worth, should be taken into consideration.

"(3)   Assuming that the railroad company wishes to buy the land, but is not compelled to do so, and the defendants wish to sell the land, but are not compelled to do so, you are to ascertain and find from the proof, under these circumstances, what was the actual reasonable cash value of the land sought to be appropriated and set apart for this right of way; that is, in the form, in the amount, and at the place taken; and in assessing the damages to that portion of the land actually taken and set apart for the use of the railroad company for its right of way you are to give the owners the reasonable market value in cash, at the time of the appropriation, to wit, October 17, 1902, without any deduction.

"(4)   In the next place, you are to consider whether there are any incidental damages to the property and to the owners, independent of that portion of the land actually appropriated. Incidental damages may be of

the following character: They may result from the necessity of new fences or walls to be constructed, or the removal of outbuildings, or the inconvenience of going through it, or the general inconvenience suffered by the owner on account of the land being cut in some particular shape, and are to be estimated also as though the land taken was occupied by as many railroad tracks as is practicable, and any form of incidental damages shown by the proof that affects the value of the tract of land in question. But you will not consider as an element of damage any depreciation resulting from apprehension of danger or negligence in the operation of plaintiff's railroad.

"(5) Should you find that there are such incidental damages, then you can offset the same from the enhancing of the value of this remaining tract of land to the owners, if any such be proven, on account of the enhanced facilities of travel, or by the erection of a depot or a village or town upon the lands; and if such incidental benefits, under the proof, equal the incidental damages, then you would so report, but if the incidental damages exceed the incidental benefits, then you should report what amount you allow for such incidental damages. Your verdict should first show the amount you find for the defendants for the reasonable cash value of the land, 9.12 acres, actually appropriated for the right of way; then the amount, if any, which you may allow for incidental damages; and upon these two amounts you

should allow interest from the 17th day of October, 1902, to this date, at six per cent. interest per annum."

It is insisted that the circuit judge erred in refusing to give in charge to the jury the following requests:

Request No. 1: "If you find that, by reason of the place where and the form in which the land for the right of way was taken, the remainder of the tract was injuriously affected or diminished in value, such damages to the remainder is an element in or a part of the just compensation to which the defendants, the owners of the land, are entitled. That depreciation and the value of the land actually taken are together the compensation, call 'damages,' which the owners are entitled to recover."

Request No. 2: "Incidental damages are also allowed in proper cases, in addition to the compensation damages as defined above in request No. 1. Incidental damages are such as are incidental to the taking—such as necessitating new fences, cutting off from wells, or from barns and outbuildings, and the like. When such damages are claimed and shown, they are, allowed, also as hereinbefore explained; but, whenever it is shown that special benefits have followed the location and construction of the road, such special benefits may be set off, as far as you may deem just and proper, against the special damages suffered. By special benefits is not meant the general advance or benefits resulting to the community in general from the construction of the road, but such benefits as result in particular to the defend-

ants from the location of the road there—such as the location of a depot there, or a convenient sidewalk, or an embankment which protects their land from an overflow, and the like."

Request No. 3: "Inasmuch as no evidence whatsoever has been offered by either party as to incidental damages and incidental benefits, the question of the consideration of such incidental damages and incidental benefits does not arise in this case, and is to be left out of consideration altogether. You will ascertain and determine the value of the land taken, and the damage, if any done, to the remainder of the tract by taking that quantity of this land, and the place where taken, and the form taken, and these constitute the damages or compensation for which you should return a verdict without deduction, together with interest thereon from October 17, 1902."

The third assignment of error is that the circuit judge erred in charging the jury as set out in the third paragraph of the charge. It is said, in this same assignment of error, the court erred in charging the jury as set out in the fourth paragraph of the charge. It is also said, under the same assignment of error, that the court erred in charging the jury as set out in the fifth paragraph of the charge. The fourth assignment is: The court erred in not instructing the jury as follows:

"That the damages or injury to the remainder of the land caused by, or resulting from, the place in which, and the form in which, the land actually taken, as taken,

is to be included in, and a part of, the compensation to which the owners are entitled, without deduction on account of special benefits or enhanced value, or on account of better facilities of travel, or location of depots and the like."

The foregoing assignments of error were made in the court of civil appeals, and sustained there, and in this court the railroad company has assigned as error the action of the court of civil appeals in sustaining the foregoing assignments. For convenience of statement we have used the assignments as made in the court of civil appeals. They present the same question suggested in another form by the assignments in this court.

There was another assignment of error made in the court of civil appeals, and sustained there, to which we shall refer later.

The various assignments above made really raise only a single question, as we understand the opinion of the court of civil appeals and the brief of counsel for the plaintiffs in error, in which brief the opinion of the court of civil appeals is referred to as stating the grounds and reasons of the appeal from the judgment of the circuit court. That question may be briefly stated in the form of a proposition. That proposition is that the just compensation guaranteed by the constitution, when land is taken under condemnation proceedings, includes, not only the value of the land actually taken, but the injury done by such taking to the residue of the tract out of which the land is taken. In other words,

it is insisted that the injury done to the residue of the tract is not incidental damages, but a part of the just compensation that should be rendered for the land actually taken.

In support of the above proposition the court of civil appeals refers to the case of *Woodfolk* v. *N. & C. R. R. Co.*, 2 Swan, 422, and, in addition, argues the question at considerable length.

It is true that there is some language in the case referred to which suggests the proposition insisted upon. However, when that case is construed in the light of subsequent decisions, we do not think that there is anything on which the contention can rest. This will be made clear by an examination of the cases.

In the case of *Paducah & Memphis Railroad Co.* v. *Stovall*, 12 Heisk., 1, it appears that the defendant owned a tract of 307½ acres of land in a body, of which 9¾ acres were appropriated by the railroad company. The location of the road was shown by the proof to have been of serious detriment to the defendants' land, and the verdict awarded to the defendants the sum of $500 as compensation for the value of the land and $1,800 as incidental damages. It appeared in that case that the circuit judge charged the jury as follows:

"The constitution secures to the defendants compensation for the land appropriated by the plaintiff, and the jury must determine the amount of it. In doing this, the plaintiff must not be regarded as a wrongdoer, but the price is to be fixed upon the assumption that

the railroad company wish to buy and that the defendants are willing to sell. The quantity of the land appropriated, with its value at the date of the appropriation, is to be ascertained from the evidence; and, in ascertaining it, the opinion of witnesses familiar with the land is to be looked to."

After having disposed of this question, the circuit judge then took up the question of incidental damages, and charged the jury as follows:

"The next inquiry is whether the defendants have sustained incidental damages by reason of the construction of the railway through their tract of land, and whether the benefits conferred by the building of the road amount to anything. In estimating the damages, the jury may take into account, if authorized by the evidence, the injury to the balance of the land, either for agriculture or for sale, the inconvenience caused by embankments or excavations, the increase or decrease in the price of the remainder of the tract, the expense of fencing, if any, the destruction of buildings, injury to the growing crop on the balance of the tract, injury to the lawn, and destruction of ornamental or shade trees. . . . The jury will return a verdict in favor of the defendants for the value of the land appropriated by the plaintiff; and if it is found that they have sustained incidental damages, and have derived benefits from the building of the road, the damages and benefits must be set off, the one against the other, and if there is a balance of damages the jury will so return,

and, if it is found that the sum of the one is equal to that of the other, the jury will so return."

In respect of this charge the court said: "We think this charge is unexceptionable, and that it is in strict accord with the rulings of this court upon the subject." 12 Heisk., 1, 3, 4.

In *Moses* v. *Sanford*, 11 Lea, 731, it appears that the county of Knox built one of the piers of a bridge across the river at Knoxville upon the land of the defendant, and thereupon such proceedings were had as that the value of the land taken and incidental damages were brought into controversy before the master. He reported the value of the land taken to be $113.55, and the incidental damages, exclusive of certain ferry privileges, at $250, and the latter privileges at $2,186.45. The defendant excepted to the valuation of the land, the $113.55. The chancellor disallowed the exception, and gave the defendant a decree for that sum. The referee to whom the case was referred, after it came to this court, reported that, in addition to the actual value of the land as given by the chancellor, the defendant should also be allowed $250, as found by the master, for incidental damages.

The facts, as shown by the opinion, were these: The defendant owned a narrow strip of land on the banks of the Holston river, about one hundred and twenty feet in length, and perhaps ninety in width, the value of which consisted almost entirely in its ferry and wharf privileges.    Two-thirds of this strip was used for a

wharf landing, and there was a ferry landing about one hundred and twenty-five yards from that part of the land occupied by the bridge pier.    The pier occupied about twenty-six feet frontage near the middle of the strip, and at a point where the bank of the river was too steep to be used.    The court said:

"The actual value of the land taken does not exceed the amount found by the master, and this sum was properly allowed.    There is proof tending to show that the land immediately below the pier is incidentally depreciated for wharfage purposes by reason of the fact that rafts and flatboats are compelled to go so far out in the stream, because of the pier, that they cannot readily be brought to land just below it.    The testimony shows that the incidental damage thus occasioned is assessed at $250, and, as there are no incidental benefits to the land arising from the erection of the bridge not common to all other lands in the vicinity, this sum ought also to be allowed the defendant."    11 Lea, 731, 732, 734.

We need not refer to the ferry privileges, because that question was determined on another principle.

In *Alloway* v. *Nashville* it appears that certain property was condemned for the site of a city reservoir. It was held in that case that the depreciation in the value of the residue of the land by reason of the proximity of the reservoir would fall under the head of incidental damages.    88 Tenn., 510, 523, 524, 526, 13 S. W., 123, 8 L. R. A., 123.

In *Wray* v. *Railroad,* a method of valuation which would work out the result insisted upon by plaintiffs in error, and which result was approved in the opinion of the court of civil appeals in the case now before us, was expressly repudiated.    113 Tenn., 544, 82 S. W., 471.

In that case the circuit judge charged the jury as follows:    "You are to arrive at the  value of the property taken by considering what was the cash market value of the entire property in September, 1903, when it was taken for railroad purposes.    After that is found, you are to ascertain what the market value of the remaining portion of the land was after cutting off the right of way, and whatever difference that makes in the actual value of the property taken, and the amount is to be allowed, without deduction or being affected in any way by incidental damages or incidental benefits."

Again, the circuit judge charged:    "The actual value of the land taken shall be arrived at in the manner in which I have told you, but you are to consider the form in which it is taken—the manner in which it is taken; and you do that by considering its market value, both before and after taken, at that place and in that manner in which it is shown by the evidence to have been taken."

The opposite view was represented by the following question, which was offered in the court below, and held to be incompetent by the circuit judge:    "Sup-

pose that the defendants, Dr. Wray and his wife, wanted to sell and the railroad wanted to buy a strip of land thirty feet wide off said lots, beginning at Baxter avenue and running along the right of way of the Southern Railway Company 237 feet; what would be the reasonable cash market value of that quantity of land taken in that place and in that form, without taking into consideration any damages or benefit that might arise to the balance of the land by reason of said sale?"

To properly understand the respective contentions as exhibited in the charge of the judge and the question overruled, it is proper to say that in that case a petition for condemnation was filed by the Knoxville, La Follette & Jellico Railway Company to condemn a strip of land thirty feet wide on the margin of certain lots belonging to Wray and wife immediately adjoining the right of way of the Southern Railway Company; the lots fronting on the Southern Railway Company. The question presented was whether the strip of land thirty feet wide should be valued in and of itself, or whether it should be so valued as to include therein the injury to the remaining part of the lot. That was the substance of the controversy. The counsel for Wray and wife proposed the question above copied, and this was objected to by the railway company; the theory which it insisted upon being that embodied in the charge of the court.

After setting out the above-mentioned questions, and the language of the charge quoted, the opinion of the court, speaking through Mr. Justice Wilkes, proceeds:

"This illustrates the different modes by which counsel for the landowner and the court and counsel for railroad proposed to test the question of the real market value of the land. All concede that the landowner is entitled to just compensation for the land actually taken, and, in addition, to the damages to the balance of the land, and that these are separate and distinct items, and must be kept separate and distinct, and neither allowed to affect or influence the amount of the other. The difference between the counsel for petitioners and the court" (the circuit court) "is the manner in which this cash market value is to be ascertained; counsel for petitioners insisting that it must be arrived at from proof of facts and opinions of witnesses as to the value of the land taken, considered in the form and at the place taken, while the court held, in substance, that the whole tract must be first valued at what it was worth before the railroad touched it, and again after the right of way was carved out, and the difference would represent the value of the part taken and appropriated. Both parties agree that incidental benefits and damages should be excluded in making the estimate. Counsel for the railroad company have cited a large number of cases from other States in which it appears that the rule and manner adopted by the trial judge was approved. We need not consider these cases, but must decide the question under our constitution and statutes, and in the light of our own adjudications."

After discussing the question, and referring to numerous authorities, among others *Woodfolk* v. *N. & C. R. R. Co.*, supra, and holding in substance the latter did not sanction the view of the circuit judge, the court held that the circuit judge was in error.     The court said, after considering the authorities referred to:

"We are of opinion the only way to arrive at this cash market value is to estimate the specific, identical land taken by placing a value upon it.     This can only be done by a statement of facts, and by opinions and estimates of parties acquainted with the land, and upon such facts, opinions, and estimates of the land must the valuation be based."

It thus appears that the theory insisted upon by the plaintiffs in error in their various assignments is not sanctioned by the authorities in this State, but directly the reverse.

The authorities we have specially referred to are all in this State that bear directly upon the subject.     There are other authorities which bear upon it in a general way, all of which we have examined:     *Railroad* v. *Raine*, 114 Tenn., 569, 86 S. W., 857; *McKinney* v. *Nashville*, 102 Tenn., 131, 52 S. W., 781, 73 Am. St. Rep., 859; *Mississippi Railway Co.* v. *McDonald*, 12 Heisk., 54; *Simms* v. *Memphis, Clarksville & Louisville R. R. Co.*, Id., 621; *City of Memphis* v. *Sarah W. Bolton*, 9 Heisk., 508; *East Tenn. & Va. R. R. Co.* v. *Love*, 3 Head, 63; *Bigelow* v. *Railroad Co.*, 2 Head, 627; *Colcough* v. *N. & N. R. R. Co.*, 2 Head, 175.

There are still other cases upon the general subject, which we have likewise examined: *Woolard* v. *Nashville,* 108 Tenn., 353, 67 S. W., 801; *Saunders* v. *Railroad Co.,* 101 Tenn., 206, 47 S. W., 155; *Parker* v. *Railroad Co.,* 13 Lea, 669; *Railroad* v. *Cochrane,* 3 Lea, 478; *Barnes* v. *Railroad Co.,* 3 Tenn. Cas., 15; *Water Co.* v. *Scott,* 111 Tenn., 321, 76 S. W., 888. In these cases may be found referred to all other cases which have not been mentioned in this opinion.

The fifth assignment of error, which was made and sustained in the court of civil appeals, arose out of the following, which occurred while the witness J. Vaulx Crockett was on the stand:

"Q. I want you to state the best offer, if any offer was ever made, to the owners of this property, prior to the taking of it by the railroad. (Objected to by plaintiff, and objection sustained and exception.) Witness, if permitted, would have answered: An offer made a short time before by W. S. Criddle, bidder, of $600 per acre for one-half of the place. By Mr. Vertrees (for defendants): Suppose we show a definite offer for this property; isn't that a strong circumstance to show its value? By the Court: I don't know of any authority that has gone beyond showing the price brought by adjoining property. (Exception taken by defendants, and answer of witness to be supplied later.)"

Nothing further appears in the record upon the subject, except that this witness was asked later in his examination:

Vaulx v. Railroad.

"I will ask you to state to the jury what offer from solvent parties in Nashville you had prior to that time for that place, or for one-half of that place, per acre, which you all refused because it was insufficient, and state the amount of the offer. (Objected to by plaintiff. Objection sustained. Exception by defendants.)"

The court of civil appeals says: "It is true there are authorities to sustain this ruling of the circuit judge, and Lewis on Eminent Domain says: 'It is incompetent for the owner to prove what has been offered for his property, or what parties who had been looking for similar property were willing to give for it; nor is it competent to prove offers for adjacent or similar property, or the prices at which owners have offered it for sale.' Lewis on Em. Domain, sec. 446, and authorities cited."

That court continues: "While this may be the rule in some jurisdictions, it is not, in our opinion, founded on reason or justice."

The court thereupon declined to follow the authority, and held that the evidence was competent. We think, in this, that court committed error. Not only as a matter of authority, but as a matter of sound reason, the evidence is incompetent. If persons could prove the value of their lands in this manner, nothing would be easier than to prepare for the controversy by having offers made through friendly parties having no real purpose to buy. It is said, however, in support of the competency of the evidence, that they must be

Vaulx v. Railroad.

*bona fide* offers; but this would necessitate a series of collateral inquiries as to the *bona fide* offers of sundry parties, and in the multitude of such matters the main issue would be lost sight of. Such evidence, and the side issues which it would induce, we feel confident would be disastrous to a sound administration of justice in cases of this character.

We are of opinion, therefore, that the judgment of the court of civil appeals was erroneous, and must be overruled, in so far as it sustained the second, third, fourth, and fifth assignments of error made in that court by the plaintiffs in error. It results that we think there was no error in the charge of the circuit judge.

The court of civil appeals, however, acted correctly in sustaining the first assignment of error, and on that ground the judgment of the circuit court must be reversed, and the cause remanded for a new trial.